**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE) MAY 3 0 2013

for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 30, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 87104-3 |
| Respondent, | ) | |
| v. | ) | En Banc |
| LARRY DEAN TYLER, | ) | |
| Petitioner. | ) | Filed ___ MAY 3 0 2013 ___ |

MADSEN, C.J.—An officer stopped the defendant for a traffic violation and pulled the car he was driving off a busy highway. When it turned out that the driver and his passenger both had suspended drivers' licenses and alternate arrangements could not be made, the officer arranged for a tow truck to move the car. In order to turn the vehicle over to the towing company, the officer conducted an inventory search of the vehicle and discovered methamphetamine during the search. The defendant was convicted of unlawful possession of methamphetamine and driving while his license was suspended. He appealed, arguing that the trial court abused its discretion when it denied his motion to suppress the evidence on the ground the search was pretextual. He also argued that because he did not consent to the search, it was unconstitutional. The Court of Appeals affirmed his convictions.

We affirm the Court of Appeals. In particular, we conclude that under article I, section 7 of the Washington State Constitution, law enforcement officers do not have to obtain consent in order to conduct an inventory search of a lawfully impounded vehicle.

FACTS

On November 12, 2009, Jefferson County Deputy Sheriff Brett Anglin saw a car exceeding the speed limit on the highway just west of the Hood Canal Bridge. When he checked the license plate, he learned that the vehicle's owner was a woman whose driver's license was suspended. He stopped the car for speeding and the driver, Larry Dean Tyler, pulled onto the paved shoulder of the highway. Anglin testified he stopped less than a foot from the fog line. As Deputy Anglin approached the car, he saw that both the driver and the passenger were men. The passenger had been making furtive movements and Anglin was concerned there might be a weapon in the car, but then it appeared to him that the passenger was trying to hide what seemed to be a can of beer. It turned out to be an alcoholic caffeinated beverage.

Anglin asked Tyler for identification and Tyler produced a Medicare card and explained he had no valid driver's license. When he checked with dispatch, Anglin found out that both men's drivers' licenses were suspended. The deputy arrested Mr. Tyler for driving while his license was suspended, handcuffed him, and put him in the backseat of the patrol car. Anglin had called for another officer to assist and this officer took the passenger into custody based on outstanding warrants but subsequently released him when uncertainty arose as to whether the warrants were extraditable.

Deputy Anglin asked for consent to search the car, but both men refused. Tyler told Anglin that the owner of the car was his girl friend and she was unable to retrieve the car because she was in jail in another county. The passenger was unable to drive since he

did not have a valid driver's license. With Tyler's permission, the passenger used Tyler's cell phone to try to find someone to drive the vehicle away. While he located someone to come get him, he was not able to find a driver for the car.

Anglin testified that the car was stopped about one foot inside the fog line next to a one-lane, congested part of the highway where the speed limit was 60 miles per hour, about one quarter mile from the bridge. Traffic coming off the bridge has two lanes and vehicles are accelerating and frequently passing each other. Close by is an intersection where accidents frequently occur.

Because there was no one to drive the car from the scene, Deputy Anglin called a private towing company after deciding to impound the car for roadway safety. He also testified he impounded the car because the driver had a suspended license. When the tow truck arrived about 30 minutes after Tyler was stopped, Anglin turned the car and the car keys over to the tow truck driver.

While waiting for the tow truck to arrive, Anglin filled out a standard Washington State Patrol tow form as he and the other officer conducted an inventory search of the car's passenger compartment. Anglin testified this search was conducted in accord with department policies to secure personal property and protect the department and the towing company. During this search, the officers saw some stereo equipment that was loose in the back seat, and when they looked at the equipment to record it Deputy Anglin

could see a clear plastic "baggie" underneath the driver's seat, clearly visible from the backseat. The contents of the baggie field-tested positive for methamphetamine.[1]

Mr. Tyler was charged with unlawful possession of methamphetamine, use of drug paraphernalia, and third degree driving while his license was suspended or revoked. At a CrR 3.6 hearing he moved to suppress the evidence that was obtained during the vehicle search, arguing that the search was an unconstitutional pretextual search.

The court concluded that once the driver and passenger were removed from the car, there was no reason for a general exploratory search. However, "[a]ny evidence of using the impound as a pretext for a warrantless search is rebutted by the officer's offer to let the passenger call for help." Clerk's Papers (CP) at 25 (Mem. Op. and Order on Mot. to Suppress Evidence, filed Jan. 21, 2010). On January 29, 2010, Tyler moved for reconsideration. He conceded that "the impound was reasonable," CP at 32, but argued that Deputy Anglin could not conduct an inventory search once Tyler denied permission to search the car. Then on February 3, 2010, Tyler moved to reopen the CrR 3.6 hearing to permit examination of Deputy Anglin about an e-mail Anglin had written that was produced after the CrR 3.6 hearing in response a defense public records request. Tyler maintained that this e-mail showed that Anglin was predisposed to engage in pretextual vehicle searches.

The court denied both motions. Following a stipulated facts bench trial, Tyler was convicted of possession of methamphetamine and driving while his license was

---

[1] Deputy Anglin also found a small closed container under the driver's seat. We do not address the search of this container because Tyler was not charged with possession of its contents.

suspended or revoked in the third degree. He appealed, and the Court of Appeals affirmed the convictions. *State v. Tyler*, 166 Wn. App. 202, 269 P.3d 379 (2012).

ANALYSIS

I.

Mr. Tyler maintains that the trial court abused its discretion when it denied his motions for reconsideration and to reopen the suppression hearing. *See Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002) (decision on motion for reconsideration is within trial court's exercise of discretion); *State v. Luvene*, 127 Wn.2d 690, 711-12, 903 P.2d 960 (1995) (quoting *State v. Mora Sanchez*, 60 Wn. App. 687, 696, 806 P.2d 782 (1991)) (decision on motion to reopen a proceeding to introduce additional evidence is within the trial court's discretion). Tyler argues that the inventory search of the car was unconstitutional under article I, section 7 of the Washington State Constitution, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision affords protection to privacy interests in vehicles and their contents. *State v. Snapp*, 174 Wn.2d 177, 187, 275 P.3d 289 (2012); *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010).

A valid warrant constitutes "authority of law" under article I, section 7. *State v. Valdez*, 167 Wn.2d 761, 771-72, 224 P.3d 571 (2009). Warrantless searches of vehicles are per se unreasonable, subject to a few exceptions that are narrowly drawn. *Snapp*, 174 Wn.2d at 187-88. One of these exceptions is a valid inventory search, and this is the exception that the State maintains justifies the search of the car that Tyler was driving.

The burden of establishing that this exception applies is on the State. *Id.* at 188; *State v. Vrieling*, 144 Wn.2d 489, 494, 28 P.3d 762 (2001).

## II. Impoundment

A vehicle may be lawfully impounded (1) as evidence of a crime, when the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense; (2) under the "community caretaking function" if (a) the vehicle must be moved because it has been abandoned, impedes traffic, or otherwise threatens public safety or if there is a threat to the vehicle itself and its contents of vandalism or theft *and* (b) the defendant, the defendant's spouse, or friends are not available to move the vehicle; and (3) in the course of enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment. *State v. Williams*, 102 Wn.2d 733, 742-43, 689 P.2d 1065 (1984) (citing *State v. Simpson*, 95 Wn.2d 170, 189, 622 P.2d 1199 (1980)).

However, if there is no probable cause to seize the vehicle and a reasonable alternative to impoundment exists, then it is unreasonable to impound a citizen's vehicle. *State v. Houser*, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980); *State v. Hill*, 68 Wn. App. 300, 305, 306, 842 P.2d 996 (1993) (even when authorized by statute "impoundment must nonetheless be reasonable under the circumstances to comport with constitutional guaranties"; "in Washington, impoundment is inappropriate when reasonable alternatives exist"); *State v. Bales*, 15 Wn. App. 834, 837, 552 P.2d 688 (1976); *see In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 151 n.4, 60 P.3d 53 (2002). The

police officer does not have to exhaust all possible alternatives, but must consider reasonable alternatives. *State v. Coss*, 87 Wn. App. 891, 899, 943 P.2d 1126 (1997). Reasonableness of an impoundment must be assessed in light of the facts of each case. *Id.* (citing *State v. Greenway*, 15 Wn. App. 216, 219, 547 P.2d 1231 (1976)). However, facts subsequent to impoundment do not bear on whether the impoundment was reasonable. *Impoundment of Chevrolet Truck*, 148 Wn.2d at 150 n.3.

The Court of Appeals concluded that Mr. Tyler conceded that the impoundment of the car was reasonable. *Tyler*, 166 Wn. App. at 209, 213, 215. That concession occurred before Tyler received a copy of the e-mail that Deputy Anglin wrote and which formed the basis for his motion to reopen the suppression hearing. Tyler obtained the copy through a public records request and we accept for present purposes that he would not have made the concession after receiving it. Thus, unlike the Court of Appeals, we do not proceed on the basis that Tyler concedes reasonableness.

According to Deputy Anglin, he impounded the car because it posed a safety hazard, there was no one available to drive it away, and Tyler's license was suspended.

If not impounded, the vehicle would have been left as an unattended vehicle creating a public safety hazard. It was parked very close to a very busy, congested single lane section of the highway, where traffic was traveling at 60 miles per hour. The community caretaking function is plainly implicated. In addition, under RCW 46.55.113(1), "summary" impoundment is authorized when the driver of the vehicle is arrested for driving while his license is suspended. Under RCW 46.55.113(2)(b) and (d),

impoundment is authorized when an officer finds a vehicle unattended on the highway where it jeopardizes public safety or when an officer arrests the driver and takes him into custody.

Deputy Anglin explored alternatives. The vehicle owner could not drive the car because she was incarcerated and apparently also had a suspended license. She was not available to assist. The passenger did not have a valid license, and after Anglin asked Mr. Tyler to loan his cell phone to the passenger to attempt to locate a driver to retrieve the car, the effort was unsuccessful. Anglin testified that if someone had been found who could have retrieved the car within about 30 minutes, he would not have impounded the car. Although Tyler says that Anglin did not ask him whether there was a person who could retrieve the car, Anglin testified that Tyler deferred the task of trying to find a driver to his passenger.

We conclude the trial court correctly determined that the impound was proper. The vehicle threatened public safety if left where it was. In addition, Tyler had been arrested for, among other things, driving with a suspended license. Anglin explored reasonable alternatives to impoundment.[2]

### III. Inventory Search

Inventory searches have long been recognized as a practical necessity. *State v. Gluck*, 83 Wn.2d 424, 428, 518 P.2d 703 (1974) (citing *State v. Montague*, 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Olsen*, 43 Wn.2d 726, 263 P.2d 824 (1953)). A

---

[2] As explained below, Tyler has not established that the trial court abused its discretion when it denied his motions for suppression, reconsideration, and to reopen the suppression hearing, and rejecting his claim that the impoundment/inventory search was pretextual.

noninvestigatory inventory search of a vehicle may be conducted in good faith after it is lawfully impounded. *Houser*, 95 Wn.2d at 154. The requirement that an inventory search be conducted in good faith is a limitation that precludes an inventory search as a pretext for an investigatory search. *Id.* at 155; *Montague*, 73 Wn.2d at 385 ("this court" would not "have any hesitancy in suppressing evidence of crime found during the taking of the inventory, if we found that . . . impoundment of the vehicle was resorted to as a device and pretext for making a general exploratory search of the car without a search warrant").

Warrantless inventory searches are permissible because they (1) protect the vehicle owner's (or occupants') property, (2) protect law enforcement agencies/officers and temporary storage bailees from false claims of theft, and (3) protect police officers and the public from potential danger. *State v. White*, 135 Wn.2d 761, 769-70, 958 P.2d 982 (1998); *Houser*, 95 Wn.2d at 154; *Gluck*, 83 Wn.2d at 428. An inventory search must be restricted to the areas necessary to fulfill the purpose of the search. *Houser*, 95 Wn.2d at 154. For example, to protect against the risk of loss or damage to property in the vehicle, the search "should be limited to protecting against substantial risks to property in the vehicle and not enlarged on the basis of remote risks." *Id.* at 155.

A. Pretext

1. Motion to Suppress

Mr. Tyler contends that the search in this case was pretextual. He first argued pretext when he moved to suppress the evidence against him. In denying the motion to

suppress, the court explained that any evidence of pretext was "rebutted" by Deputy Anglin's "offer to let the passenger call for help, once he knew the owner was in jail and not available to assist to retrieve her vehicle." CP at 25. The court said that the arresting officer had compelling reasons to impound the vehicle, and once this occurred, it was "incumbent upon him to inventory its content before turning it over to the tow truck driver." *Id.*

Initially, Mr. Tyler's briefing intertwines his argument of pretext with his argument that consent to search must be obtained from the owner, the owner's spouse, or the driver before an inventory search may occur. We address the latter issue of consent below and conclude that Deputy Anglin was not required to obtain Mr. Tyler's consent before conducting an inventory search. We therefore do not accept Tyler's invitation to analyze consent and pretext as a composite, and instead consider consent only insofar as it is factually implicated here because Deputy Anglin asked if Tyler would consent to a search, which Tyler refused to do.

The trial court did not abuse its discretion when it denied the motion to suppress. The record supports the officer's decision to impound. The vehicle could not safely be left where it was because it posed a considerable hazard to public safety. Alternatives to impoundment were sought but not found. When Anglin learned the owner could not retrieve the vehicle and the passenger could not drive it, he asked Tyler to lend his cell phone to the passenger so the passenger could try to find someone to retrieve the vehicle.

His willingness to permit the vehicle to be removed from the scene cuts strongly against pretext.

Once Anglin determined impoundment was the only reasonable course left, he followed all appropriate steps for impounding the vehicle. Among these steps was the necessity to provide for the vehicle to be towed to a safe location. Anglin called the private towing company that was next on the rotation for such calls. Under state law, "for all vehicle impounds after June 30, 2001," "[a]ll law enforcement agencies must use" "a uniform impound authorization and inventory form" that the Washington State Patrol has provided by rule, and by July 1, 2003, these agencies must also adopt "uniform impound procedures" that the state patrol has developed. RCW 46.55.075. In accord with the statutory directive, Deputy Anglin filled out the standardized Washington State Patrol form provided by rule, "Authorization to Tow/Impound and Inventory Record." CP at 56 (capitalization omitted). This form required entry of the vehicle's mileage, license plate number, VIN (vehicle identification number), make and model, and style, and whether there was any damage to the exterior of the vehicle. In addition, the form requires that the officer list items found in the vehicle. Anglin filled this form out while assisted by another officer. There were three amplifiers and one speaker in the backseat of the car, and the need to record these items led Anglin to where he could see the methamphetamine evidence clearly in view.

As mentioned, before conducting the inventory search, Anglin asked both Tyler and the passenger if they consented to a search. Both denied consent. Anglin was not

required to obtain consent from Tyler, but the briefing before us indicates that requesting consent to search is frequent, and nearly standard, for many law enforcement agencies and officers.

Tyler maintains, though, that Deputy Anglin testified to his "understanding of inventory consent searches," and Tyler says this testimony reveals "the type of general exploratory search that is conducted to obtain evidence." Suppl. Br. of Pet'r at 18. This mischaracterizes the testimony. Anglin was testifying about the scope of a search that can be conducted when consent is given; nothing suggests that he understood he was addressing an "inventory consent search." As an experienced officer,[3] Anglin would have been familiar with the consent exception to the warrant requirement and would have readily testified about the scope of a search pursuant to consent when asked about a consent search (he was not asked about an "*inventory* consent" search).

2. Motion to Reopen the Suppression Hearing

Tyler moved to reopen the suppression hearing to introduce evidence of an e-mail that Deputy Anglin wrote that Tyler contends supports his claim that the search was pretextual. Evidently Tyler obtained this e-mail between the date he moved for reconsideration of his motion to suppress and the date of his motion to reopen. The trial court denied this motion and Tyler's motion for reconsideration in the same ruling. The Court of Appeals affirmed this ruling, finding no abuse of discretion.

The subject line of the e-mail states: "RE: Search incident to arrest" and Anglin sent it to other sheriff's department personnel in an attempt to persuade them that he

---

[3] He had 10 years' experience.

should be trained as a K-9 officer. CP at 36. Six paragraphs of the e-mail address

reasons why another K-9 unit would be useful, practicalities of costs and other burdens

involved in training for and maintaining a second unit, and ways to mitigate these

problems.

The first paragraph, Tyler contends, shows that Deputy Anglin was predisposed to

conduct pretextual inventory searches in order to circumvent the decision in *Arizona v.

Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).[4] This paragraph contains

an apparent reference to *Gant*:

> This unfortunate ruling hinders our ability to continue the efforts that have
> been enforce [sic] for some time. The obvious way to circumvent this is
> impounding the vehicle and performing an inventory search. The problem
> with this is that we must afford the person the chance to contact someone
> else and determine if it is safely off of the roadway or not. It also obviously
> limits what we can search as well. The other way around this case and that
> is [sic] the use of a K-9.

CP at 36. Tyler's pretext theory rests on the idea that an inventory search can be

substituted for the search incident to arrest search that was allowed prior to *Gant*.[5]

---

[4] *Gant* contains two principal holdings under the Fourth Amendment to the United States
Constitution, both involving the search incident to arrest exception to the Fourth Amendment
warrant requirement. The first is that a warrantless search of a vehicle incident to arrest of a
recent occupant is authorized only when the arrestee is unsecured and within reaching distance of
the passenger compartment of the vehicle at the time of the search. *Gant*, 556 U.S. at 344.
Second, "a search incident to a lawful arrest" is justified "when it is 'reasonable to believe
evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343 (quoting
*Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia,
J., concurring)). In *Gant*, the United States Supreme Court rejected the widely applied rule that a
vehicle search incident to arrest was constitutional when conducted contemporaneously with the
arrest of the occupant, regardless of whether the arrestee had been physically removed from the
vicinity of the vehicle's passenger compartment.
[5] *Gant* does not alter the analysis applicable under other recognized exceptions to the warrant
requirement. *Id.* at 351(when the "justifications" for a search incident to arrest "are absent, a

In denying the motions for reconsideration and to reopen, the trial court explained that it had determined the impound was reasonable and then said that once the impoundment occurred Anglin had no alternative but to conduct an inventory search to protect himself, his department, and the tow company from possible future claims. The court said that "to do an impound without doing an inventory would be inappropriate, if not foolish." CP at 41. The trial court also said that the impound occurred before *Gant* was filed. But as Mr. Tyler correctly says, the impound in fact occurred months after *Gant* was filed.[6] Thus, the second reason the court gave is incorrect.

However, despite this error, denying the motion to reopen is sufficiently justified by the first reason the court gave, as the Court of Appeals held. State law required that Anglin list the inventory of the vehicle before turning it over to the private towing company. In addition, Anglin testified that cataloguing the contents is done to protect the contents and to protect the sheriff's office and tow company from accusations of theft. He also testified that sheriff's office policies required him to conduct an inventory search once a vehicle was impounded; cataloguing the contents of the vehicle was "standard" and done "every time" a vehicle was impounded. Verbatim Report of Proceedings at 22. Although he testified that he was unaware of any written policies, he testified that he had been trained in the standards he used and these standards had remained the same for the 10 years he had been with the department.

---

search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies").

[6] The trial court's mistake evidently occurred because the State erroneously stated in its response to the motion to reopen that the offenses were committed in February 2009, prior to the *Gant* decision, when they actually were committed in November.

The point of the e-mail was not to try to circumvent *Gant* or encourage the department to disobey the law (or express his own intentions to do so), but to try to convince the sheriff's department to send Anglin for K-9 training. The first paragraph of the e-mail does not say what Tyler urges in any event. The paragraph actually explains that inventory searches themselves are more restrictive than the searches possible under the search incident to arrest searches that were permissible prior to *Gant*. Anglin says in the first paragraph that an inventory search will require the officer to explore whether someone other than the driver can move the vehicle and that the scope of the search is more restrictive (closed containers and trunks cannot be searched). Thus, contrary to Tyler's apparent claim, Anglin recognized that a vehicle search cannot simply be substituted for a search incident to arrest as it existed prior to *Gant*.

The Court of Appeals properly concluded that the trial court did not abuse its discretion in denying the motion to reopen.

We hold that the Court of Appeals correctly held that the trial court did not abuse its discretion in denying the motion to reopen the suppression hearing.

B. Consent to Search

Tyler argues that law enforcement officers must obtain the express consent of the vehicle's owner or the owner's spouse or, if the owners are not available, the driver before conducting an inventory search. He maintains the inventory search here was unlawful because it occurred after he denied consent and the officers did not attempt to

15

obtain the owner's consent. The Court of Appeals held that consent is not a requirement for an inventory search. We agree.

Consent is recognized as an independent basis for a warrantless search, *see, e.g.*, *State v. Hendrickson*, 129 Wn.2d 61, 72, 917 P.2d 563 (1996), and thus, if accepted, Tyler's argument would to a significant extent nullify the inventory exception to the warrant requirement where searches of impounded vehicles are concerned.

As explained, inventory searches are limited searches for limited purposes. *Houser*, 95 Wn.2d at 153. When conditions justify a reasonable inventory search, in good faith and without pretext, the officer's purpose is unrelated to discovering contraband or evidence of criminal activity. Rather, the officer is concerned with securing the vehicle and property within the vehicle. For this reason, under article I, section 7, as under the Fourth Amendment, the "criteria governing the propriety of inventory searches are largely unrelated to the justifications for other exceptions to the warrant requirement." *Houser*, 95 Wn.2d at 154 (citing *South Dakota v. Opperman*, 428 U.S. 364, 370 n.5, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *United States v. Bloomfield*, 594 F.2d 1200 (8th Cir. 1979)); *see White*, 135 Wn.2d at 767 (*Houser* sets forth an article I, section 7 analysis). We are concerned with whether, under article I, section 7, the purposes and scope of an otherwise valid inventory search justify a search in the absence of consent.

Initially, we address Tyler's overall claim that citizens' privacy interests are inadequately protected under current law. We do not agree with this sweeping statement.

16

The vehicle search is a limited search, as noted, and unchecked searches are not permitted. An inventory cannot occur if there is no lawful basis for impounding the vehicle; officers are not free to impound just any vehicle parked on the street or any vehicle they stop for traffic infractions.[7] As explained, and generally speaking, officers must also consider reasonable alternatives to impoundment, and if they fail to do so, any subsequent search may be found unlawful.

Private interests are also protected because of the limited scope of permissible inventory search. An inventory search is permitted only to the extent necessary to achieve its purposes. *Houser*, 95 Wn.2d at 155. Searches of locked trunks and locked containers is prohibited under the vehicle inventory exception because privacy interests exhibited by placement of any property in such containers and in trunks outweigh the need to inventory the contents to protect the property or protect against false claims of theft. *White*, 135 Wn.2d at 766-67. Indeed, under article I, section 7, the officer must

---

[7] The Court of Appeals listed some of the reasons that justify impoundment:
> "Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture."

*Bales*, 15 Wn. App. at 835-36 (quoting *State v. Singleton*, 9 Wn. App. 327, 332-33, 511 P.2d 1396 (1973)).

obtain permission to search the locked trunk or a locked container.[8] *Houser*, 95 Wn.2d at 156; *see White*, 135 Wn.2d at 771. The only exception is where manifest necessity exists. *White*, 135 Wn.2d at 772; *see, e.g., State v. Ferguson*, 131 Wn. App. 694, 703-04, 128 P.3d 1271 (2006) (presence of chemical fumes indicated likelihood that highly combustible materials were being transported in the vehicle's trunk and presented manifest necessity for search).

Because of the privacy interests at stake, pretextual searches are prohibited, even if the search would otherwise be permissible under the inventory exception. But consent is not necessary to protect from pretextual searches. Indeed, trial courts are better positioned to determine whether a search was pretextual, which is sometimes a difficult a determination. *Montague*, 73 Wn.2d at 389. In addition, privacy interests in contents of abandoned vehicles would not be protected by a consent requirement such as Tyler proposes.

In addition to our conclusion that privacy interests are protected under current law, we believe that the purposes of the inventory search could in fact be impeded by a rule requiring consent before a vehicle inventory search can occur. These purposes are to protect private property in unlocked areas of the vehicle, prevent false claims against law enforcement agencies and others, and ensure the safety of law enforcement officers and others from dangerous items located in vehicles.

---

[8] Given modern vehicle design, there may be a question as to when a trunk is locked if it can be accessed from the interior of the vehicle. However, that question is not presented here. Moreover, no question is presented regarding locked containers.

The rule that Tyler proposes could not be applied when police impound abandoned vehicles and the owner is not available. RCW 46.55.085 requires impoundment of abandoned vehicles left within a highway right-of-way. Under RCW 46.55.113 police may impound a vehicle that blocks or obstructs a roadway. The owner may not be available or locatable within a reasonable time, and using a telephone to attempt to contact an owner is problematic because the identity of the person on the other end of the call cannot be confirmed. Impounding the vehicle without inventorying its contents could expose the property within to damage or theft, impeding the goal of protecting property in an impounded vehicle.

Protection against false claims of theft may be hampered. Although we noted in *White*, 135 Wn.2d at 770 n.9, that police become involuntary bailees when they impound a vehicle, and therefore they have a duty of slight care for purposes of false claims of theft, inventory searches nevertheless protect them from false claims alleging they have failed to meet even this standard.[9]

In addition, the lesser duty of care does not apply in the cases where private tow truck operators obtain possession of the vehicle and its contents. In general, these companies are common carriers owing the highest degree of care. *Conger v. Cordes Towing Serv., Inc.*, 58 Wn.2d 876, 878, 365 P.2d 20 (1961). Regardless of the standard of care, however, the inventory conducted by officers and the requirement that

---

[9] There may be circumstances where the driver has no authority over the contents of the vehicle, raising the possibility that obtaining the consent of the driver would not insulate the law enforcement agency from false claims.

inventoried property be listed on the standard inventory form required under RCW 46.55.075 is the clearest protection for these private companies.

The inventory search exception furthers officer and public safety. This includes assisting law enforcement officers to identify and avert any danger posed by firearms and other dangerous items left unsecured in an uninventoried vehicle where they might be accessed. *See Colorado v. Bertine*, 479 U.S. 367, 373, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). We have recognized that in most instances there is little danger and its possibility will not justify a search in every case, *Houser*, 95 Wn.2d at 154 n.2, and there are generally thousands of vehicles on the streets or in other places generally not thought to pose such dangers. Nonetheless, it is a consideration for deciding whether consent furthers the purposes of the vehicle inventory search.

In a related vein, although recognizing these are not frequent occurrences, the State and amici have offered examples of cases where harm to individuals, property, and pets has resulted where vehicles have not been subjected to even a limited search before vehicles are towed from the scene and stored in lots. Amicus curiae Towing and Recovery Association of Washington has cited a number of news stories across the country in which children, human remains, and explosives have been found during inventory searches or after impoundment. A consent requirement would impede discovery of such problems during routine inventory searches.

We decline to add a consent requirement to the inventory search exception. The exception is already carefully limited to protect privacy interests recognized under article

I, section 7. Even if consent might add additional protection in some cases, this does not mean it is constitutionally necessary. Unless manifest necessity exists, we have, as noted, required obtaining consent to search lock containers and vehicle trunks, where privacy interests are greater. Whether consent should be required in other subcategories of inventory searches is not a question posed by this case, and we will not speculate.

Finally, we must address statements concerning consent in *Williams* and *White*. As Tyler says, we have twice suggested that consent might be required if the owner is present when the vehicle is impounded and the officer decides that an inventory search should be conducted. In *Williams*, the driver was stopped when he tried to drive away from the scene of a possible burglary. We held that the stop exceeded the scope of a valid *Terry*[10] stop. We also rejected the State's argument that the search of the defendant's car was justified as an inventory search, concluding that the requirements for a lawful impoundment did not exist. *Williams*, 102 Wn.2d at 742-43. We added that if impoundment had been authorized, it was "doubtful that the police could have conducted a routine inventory search without asking [the defendant] if he wanted one done." *Id.* at 743.

In *White*, we concluded that the vehicle's trunk was locked regardless of the fact it could be opened by operating a release latch in the passenger compartment. We therefore applied our holding in *Houser* that the permissible scope of an inventory search does not include locked containers or trunks "absent a manifest necessity for conducting such a search." *Houser*, 95 Wn.2d at 156; *see White*, 135 Wn.2d at 771 ("possibility of theft

---

[10] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

21

does not rise to the level of manifest necessity"). Because in searching the locked trunk the police exceeded the authority to conduct an inventory search, evidence from the trunk should have been suppressed.

In the course of our discussion in *White*, we noted the statement in *Williams* that "police may not conduct a routine inventory search following the lawful impoundment of a vehicle without asking the owner, if present, if he or she will consent to the search." *White*, 135 Wn.2d at 771 n.11. In *White*, as in *Williams*, the search was held unlawful for other reasons, i.e., because police searched a locked trunk.

Although both comments are dicta, and both refer to a context where the owner was at the scene, neither case requires consent as a condition precedent to inventory searches. Importantly, in neither case did we address the many factors that should be considered in deciding whether consent to an inventory search should be required. We engaged in little analysis. Moreover, the only authority underlying the dicta in *Williams* and *White* is *United States v. Lyons*, 227 U.S. App. D.C. 284, 706 F.2d 321, 335 n.23 (1983), which was cited in *Williams*. But *Lyons* itself does not present much support.

In *Lyons*, officers engaged in a postarrest exploration of the closet in the defendant's hotel room, which was unnecessary for safekeeping contents of the closet; the officers could simply have locked the door as they left and the hotel would have the responsibility of taking care of the defendant's belongings. The court concluded the search of the closet could not be justified as an inventory search, explaining that the hotel room served as the defendant's temporary abode and citizens' interests in the privacy of

their homes may be overridden only on a showing of public interests more compelling than those necessary to justify intrusion into vehicles. As we have recognized, however, there is a heightened privacy interest in one's dwelling.

In the footnote in *Lyons* that is specifically cited in *Williams*, cases are listed for the proposition that consent is required in the automobile inventory setting. *See id.* However, these cases do not indicate that consent should be a prerequisite to a valid vehicle inventory search under article I, section 7. In the first case, *United States v. Wilson*, 636 F.2d 1161 (8th Cir. 1980), the search of a locked trunk was at issue. We have held, as explained, that an inventory search cannot include a locked trunk, and unless a manifest necessity is presented, consent must be obtained to conduct a search of a locked trunk. In the second case, *State v. Killcrease*, 379 So. 2d 737 (La. 1980), the officers did not permit the defendant to call his wife, who was three miles away, to come get the vehicle, or explore other alternatives. As explained, we require officers to determine that there are no reasonable alternatives to impounding a vehicle. In the third case, *State v. Mangold*, 82 N.J. 575, 414 A.2d 1312 (1980), the vehicle had been in an accident and posed a safety hazard, the owner was present, and the court said that the owner should have been allowed the opportunity to make arrangements for safekeeping of property in the vehicle. In the fourth case, *State v. Goff*, 166 W. Va. 47, 272 S.E.2d 457 (1980), the vehicle was never taken into police custody; the facts did not show impoundment. If the vehicle is never impounded, of course, an inventory search is not justified under the inventory search exception we recognize under article I, section 7.

These cases do not support the conclusion that consent should be a requirement for an inventory search under article I, section 7.

In short, neither *Williams* nor *White* required us to analyze the issue whether consent should be required and accordingly there is little analysis of the question, and the dicta in these cases rests on authority that does not support importing a consent requirement into the vehicle inventory search exception under article I, section 7. We have, nonetheless, concluded that consent is required in certain, limited circumstances (absent manifest necessity, consent is required to search locked containers and locked trunks because these areas are not subject to an inventory search after the vehicle is impounded). Whether a consent requirement should be imposed in any other, limited vehicle impoundment contexts is not presented by the circumstances of the present case.

We decline to adopt a requirement that consent of the owner, the owner's spouse, or the driver is a necessary prerequisite for evidence obtained in a vehicle inventory search to be admissible.

## IV. Sufficiency of Evidence

Finally, Mr. Tyler contends that there is insufficient evidence supporting some of the trial court's findings.

He correctly maintains that the court erroneously found that he was arrested on February 11, 2009. The State concedes and the record shows he was stopped and arrested on November 12, 2009. He also correctly points out that the court erroneously found that both occupants of the car were engaged in furtive movements as Anglin

approached the car. The record shows that only the passenger made such movements when he tried to hide the alcoholic beverage. Insufficient evidence supports these two findings.

However, evidence supports the trial court's determination that Anglin conducted a routine inventory search pursuant to department policies. Deputy Anglin testified that he was trained to conduct routine inventory searches, that the procedures were standard within the department, and that they had been followed for at least 10 years. Although Anglin was not aware of any written policies, and the testimony elicited does not contain details, there is sufficient evidence to support the court's finding.[11]

Next, Tyler contends that there is insufficient evidence that he stopped the car a foot from the fog line. Tyler testified that he stopped two or three feet from the fog line. Deputy Anglin testified Tyler stopped a foot from the fog line. Credibility judgments are left to the trial court. *See State v. Broadaway*, 133 Wn.2d 118, 134, 942 P.2d 363 (1997).

Lastly, Mr. Tyler contends that there is insufficient evidence supporting the trial court's determination that Anglin authorized Tyler to give his cell phone to the passenger in order for the passenger to try to find someone to retrieve the car. Anglin testified to this effect, while Tyler testified that he was never asked whether he knew of someone who could come get the car and that Anglin only asked him if the passenger could use the

---

[11] While Anglin did not recall written policy, at the outset of the suppression hearing the State's counsel said he had a copy of the Jefferson County Sheriff's Office policies and procedures on impound and would provide defense counsel the procedure, which he described as largely mirroring what the statutes provided.

cell phone to find someone to drive him, the passenger, from the scene. Again, the credibility determination is for the trial court. Sufficient evidence supports the finding.

While two of the challenged findings are not supported by the evidence, this does not undermine the trial court's rulings on the motions to suppress, for reconsideration, and to reopen the suppression hearing. While the finding concerning the timing of Tyler's arrest led the court to erroneously believe that Anglin's e-mail was sent before *Gant* was filed, the trial court's determination that the hearing should not be reopened to consider the e-mail on the issue of pretext is otherwise supported. The matter of whether both occupants made furtive movements or just the passenger did does not alter the analysis on any of the issues.

## CONCLUSION

The trial court did not abuse its discretion when it denied the defendant's motion to suppress the evidence that was obtained during the inventory search that followed lawful impoundment of the car that he was driving. The evidence was insufficient to show the search was a ruse to enable the officer to make an investigatory search. The defendant's motion to reopen the suppression hearing was also properly denied because the evidence of an e-mail that the arresting officer wrote does not show predisposition to use an inventory search as a pretext for a more generalized search.

Contrary to Mr. Tyler's contention, under article I, section 7, law enforcement officers are not required to obtain consent of a vehicle's owner, the owner's spouse, or the driver before conducting an inventory search.

We affirm the Court of Appeals' decision.

No. 87104-3

_Madsen, C.J._

WE CONCUR:

_[signature]_ | _Stephen, J_

_Owens, J_ | _Wiggins, J._

_Fairhurst, J._ | _González, J._

_[signature]_

No. 87104-3

CHAMBERS, J.[*] (dissenting)—The majority argues the officer in this case did nothing procedurally wrong when he impounded and searched the car, and therefore the search was not pretextual. But our pretextual analysis has nothing to do with proper procedure. The issue is whether those procedures were used as a pretext for an investigation of criminal activity that would not otherwise have been authorized by law.

We have in this case an e-mail by the searching officer relevant to a pretextual analysis. In the e-mail, the searching officer states, "The obvious way to circumvent [*Gant*[1]] is impounding the vehicle and performing an inventory search." Clerk's Papers at 36. This evidence, together with the other facts of this case, persuades me that under the proper analysis, the purpose of the search was to investigate criminal activity and would not otherwise have been authorized by law.

The pretense that police officers are doing these searches for the benefit of the person whose privacy is invaded and whose property is searched is not tenable.

---

[*] Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

1

Assuming for a moment that an inventory search is for the protection of the owner of the property, when balanced against the constitutional protection against searches without authority of law, the accused's declaration that he does not want his property searched undermines any notion the search is for the benefit of the accused. The property owner should be able to consent or not consent to the search. Because the rationale does not support the search in this case, I would hold the inventory search here was pretextual, performed so the officer could conduct an investigative search.

Unlike the federal constitution, which permits reasonable searches, article I, section 7 of the Washington Constitution prohibits searches without authority of law. I would hold that so-called "inventory" searches in the presence of the owner of the vehicle are indistinguishable from ordinary searches and that the full protections of our constitution should apply. I respectfully dissent.

Chambers, J. Pro Tem.