**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 5 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-30028 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00253-JCC-1 |
| v. | |
| CHRISTOPHER M. GATES, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted November 6, 2018
Seattle, Washington

Before: McKEOWN and FRIEDLAND, Circuit Judges, and GAITAN,** District Judge.

Defendant Christopher Gates ("Gates") challenges his convictions under 18

U.S.C. § 922(g)(1) for two counts of being a felon in possession of a firearm and

two counts of misdemeanor possession of a controlled substance in violation of 21

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

U.S.C. § 844(a). Gates's convictions arise out of two separate police encounters: the first in the parking lot of a strip club long after the club had closed for the night, and the second when Gates was arrested following a traffic stop and his vehicle impounded. We affirm in part and reverse in part, holding that the district court properly denied Gates's motion to suppress a firearm seized in the first incident but erred in denying his motion to suppress a firearm and drugs seized in connection with the second incident.

**1.** Gates raises several challenges to the district court's denial of his motion to suppress the firearm seized from his vehicle after the incident in the strip club parking lot. All of his arguments are meritless.

First, the police officers had reasonable suspicion for the initial investigatory detention that led to the seizure of the gun. Police officers may approach individuals to ask questions—even when they "have no basis for suspecting a particular individual"—without a Fourth Amendment seizure occurring. *Florida v. Bostick*, 501 U.S. 429, 435 (1991). Here, the police were permitted to initiate a consensual encounter with Gates in the parking lot, such as approaching his vehicle to ask him questions about why he was still there after the club had closed.

Having a valid reason to approach the car, one of the officers immediately saw the firearm in plain view on the seat next to Gates. In combination with the surrounding circumstances, this gave the officers reasonable suspicion that Gates

2

might have been planning to rob the club or its patrons, and thus to conduct an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Police may also conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Id*. at 27. The officers already had reasonable suspicion that Gates was planning to rob the strip club or its employees, and, when Gates woke up and began moving around inside the vehicle, the officers developed a reasonable fear for their safety, providing independent justification for an investigatory detention and frisk for weapons.

Second, the fact that Gates was handcuffed immediately after his removal from the car, does not make the encounter an arrest rather than a *Terry* stop. *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996); *see also United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983) (holding that a frisk was still part of an investigatory stop even though the suspect was lying down and handcuffed). Holding a suspect at gunpoint similarly does not necessarily escalate an investigatory stop to an arrest. *See, e.g., United States v. Alvarez,* 899 F.2d 833, 838–39 (9th Cir. 1990) (defendant was not arrested even though officers approached his vehicle with guns drawn and ordered him to step out of his car). The district court therefore did not err in concluding that Gates was merely detained and not arrested. And, having detained Gates, the officers were justified

3

in conducting a protective frisk of the passenger compartment of the car to secure the gun in the front seat. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).

Third, we decline to consider Gates's argument that the circumstances made his production of his driver's license involuntary because the issue was not properly raised in the district court. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal . . . are deemed forfeited.").[1]  And, once the police officers identified Gates as a felon, they had probable cause to arrest him for possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2]

**2.**  The trial court did err, however, in denying the motion to suppress evidence discovered following the traffic stop.  As part of the "community caretaking function," law enforcement officers are permitted under the Fourth Amendment to impound a vehicle and conduct an inventory search of that vehicle. *See South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976).  But federal law requires that, when a police officer decides to impound a vehicle and conduct an

---

[1] Even if we were to review for plain error, neither the testimony about Gates's provision of his identification nor the law surrounding consent in such circumstances would support the conclusion that any error here was plain. *See United States v. Olano*, 507 U.S. 725, 734 (1993) ("'Plain' is synonymous with 'clear,' or, equivalently, 'obvious'. . . . under current law").

[2] Because we conclude that the district court's reasons for denying the motion to suppress the firearm seized in the first incident were appropriate, we need not reach the Government's alternative argument that the gun would have inevitably been seized in a search incident to arrest.

inventory search, the officer must comply with state law governing impoundments as well. *United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989).

Washington law imposes two requirements for a vehicle to be impounded: first, it must be necessary for "the vehicle [to] be moved because it has been abandoned, impedes traffic, or otherwise threatens public safety or if there is a threat to the vehicle itself and its contents of vandalism or theft" and, second, "the defendant, the defendant's spouse, or friends are not available to move the vehicle." *State v. Tyler*, 302 P.3d 165, 170 (Wash. 2013). Police officers need not exhaust all possible alternatives, but they must at least *consider* reasonable alternatives, *id.* at 170, and show that they "attempted, if feasible, to get from the driver the name of someone in the vicinity who could move the vehicle; and then reasonably concluded from [their] deliberation that impoundment was in order," *State v. Hardman*, 567 P.2d 238, 241 (Wash. Ct. App. 1977).

Here, the impoundment and subsequent inventory search of Gates's car after the traffic stop violated Washington law. The officer on the scene did not consider reasonable alternatives to impoundment by asking whether Gates had friends or family who could move the vehicle, rendering his conduct deficient under the second prong of the *Tyler* test. Because the impoundment was improper, the subsequent inventory search was invalid as well. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The firearm and cocaine found in the car should therefore

5

have been suppressed.[3]

**AFFIRMED** in part and **REVERSED** in part.

---

[3] The Alprazolam pills found in the car should also have been suppressed, but Gates conceded at oral argument that his conviction for possession of Alprazolam may still stand based on the Alprazolam properly found on his person when he was searched incident to his arrest. Because we hold that the evidence found in the car after it was impounded must be suppressed, we need not reach Gate's alternative argument that trial counsel was ineffective for failing to challenge other aspects of the search of the car.