# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51062-6-II |
| Appellant, | |
| v. | |
| TIMOTHY CARSELL KETCHUM, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Timothy Carsell Ketchum was charged with possession of a controlled substance—methamphetamine.  The State appeals the trial court's suppression of methamphetamine discovered during an inventory search of a vehicle driven by Ketchum.  The State argues that Ketchum did not have standing to contest the search and that even if he did, the search was a lawful inventory search following a lawful impoundment of the vehicle.  Ketchum argues that, regardless of the lawfulness of the impoundment, law enforcement should have allowed him to waive civil liability in lieu of allowing an inventory search of the vehicle.

We hold that Ketchum had standing to contest the search, but that the trial court erred in ordering the evidence to be suppressed because the search was a proper inventory after the vehicle's lawful impoundment.  Further, because the impoundment of the vehicle was lawful, we hold that Ketchum could not avoid an inventory search by waiving civil liability.  We reverse the suppression order and remand to the trial court for further proceedings.

FACTS

On March 12, 2016, Washington State Patrol Trooper Allen Nelson stopped Ketchum for speeding near Forks around 4:30 P.M. Ketchum told Trooper Nelson that the vehicle he was driving belonged to his girlfriend who lived in Port Orchard.[1] Trooper Nelson discovered that Ketchum was driving with a suspended license and had five active arrest warrants, including one for third degree driving with a suspended license. Another law enforcement officer arrived at the scene for officer safety reasons. Trooper Nelson arrested Ketchum for third degree driving with a suspended license and for a local warrant.

Ketchum had stopped the vehicle over the fog line on the shoulder of a two-lane portion of State Route 101. At the time of Ketchum's arrest, it was raining hard, water was "bouncing off the pavement," and there was standing water on portions of the pavement. Verbatim Report of Proceedings (VRP) (Sept. 14, 2017) at 13. Visibility on the roadway was poor at times.

Based on the arrest, ownership of the vehicle, and weather and road conditions, Trooper Nelson told Ketchum he had to impound the vehicle because Ketchum was driving with a suspended license. Trooper Nelson believed that it was not feasible for another law enforcement officer to move the vehicle because they would have to leave a patrol vehicle unattended and there were logging trucks on the road at that time of day. Further, bicyclists often used the shoulder of the road where the vehicle was located, and there was no place to push the vehicle to get it off the shoulder. Trooper Nelson, believing that the legal owner of the vehicle was over 100 miles away in Port Orchard, did not discuss with Ketchum if anyone could come and move the vehicle.

---

[1] Port Orchard is approximately 137 miles from Forks.

Prior to the vehicle being towed, Trooper Nelson conducted an inventory search of the vehicle and discovered suspected methamphetamine. After the tow truck arrived, but before it was hooked up to the vehicle, Trooper Nelson received a call from Sergeant John Ryan. Sergeant Ryan had spoken with Ketchum's girlfriend who stated that Ketchum took the vehicle without her permission, but she did not want to press charges. She also said that Ketchum was soon to be her ex-boyfriend. She did not give Sergeant Ryan instructions regarding the vehicle or say anything about not wanting the vehicle impounded.

The State charged Ketchum with possession of a controlled substance—methamphetamine. Before trial, Ketchum moved to suppress the evidence discovered as a result of the inventory search, arguing that the impoundment was improper. After conducting a CrR 3.6 hearing, the trial court issued a memorandum opinion, finding the impoundment and resulting inventory search were unlawful. Accordingly, the trial court suppressed the evidence. The trial court then entered a minute order stating that the court's order suppressing the evidence had the practical effect of terminating the case. The State appeals.

## ANALYSIS

### I. AUTOMATIC STANDING AND THE EXCLUSIONARY RULE

As a threshold matter, the State argues that Ketchum cannot benefit from the exclusionary rule because he had no rights to assert regarding the search of his girlfriend's

vehicle.[2] The trial court did not address either Ketchum's standing or whether he could benefit from the exclusionary rule.

Although both the State and Ketchum raised these issues, the trial court did not address standing or the exclusionary rule in its memorandum opinion. Even though the trial court did not address the standing or privacy interests arguments directly, we assume that the trial court implicitly found that Ketchum had standing to assert a privacy interest because the trial court ruled on the merits of the motion to suppress.

In 1960, the United States Supreme Court created an "automatic standing" rule. *Jones v. United States*, 362 U.S. 257, 265-66, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), *overruled by United States v. Salvucci*, 448 U.S. 83, 85, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980). The doctrine of automatic standing provides a defendant automatically has standing to contest an allegedly illegal search where his possession of the seized evidence is an essential element of the charged offense. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007). In 1980, the Supreme Court overturned the automatic standing rule in *United States v. Salvucci*, 448 U.S. at 83. Washington, however, continues to adhere to the automatic standing rule based on article I, section 7 of the Washington Constitution. *Evans*, 159 Wn.2d at 407. Thus, a driver of a borrowed vehicle charged with a possessory offense as a result of a search has standing to raise a claim objecting to that search. *State v. Vanhollebeke*, 190 Wn.2d 315, 322, 412 P.3d 1274 (2017).

---

[2] In its reply brief, the State argues that the trial court used the wrong legal standard by failing to address whether Ketchum could benefit from the exclusionary rule. To the extent the State is raising a different argument for the first time in its reply brief—that the trial court used the wrong legal standard—we decline to consider it. RAP 10.3(c).

Here, Ketchum was charged with the possessory offense of possession of a controlled substance—methamphetamine, that was found during a search of the borrowed vehicle he was driving. Consequently, he had standing to contest the search.[3]

## II. IMPOUNDMENT AND INVENTORY SEARCH

The State argues that the trial court erred when it granted Ketchum's motion to suppress. Specifically, the State argues that the impoundment and resulting inventory search were lawful because Trooper Nelson considered the requisite reasonable alternatives to impoundment.[4] In addition to arguing that the search was unlawful, Ketchum argues that even if the impoundment was lawful, he should have been given the opportunity to waive civil liability prior to the inventory search. We hold that the trial court erred in suppressing the evidence because the impoundment and inventory search were lawful and because Ketchum could not have avoided an impound search by waiving civil liability.

A.    *Legal Principles*

When reviewing a suppression order, we consider whether substantial evidence supports the trial court's findings of fact and whether those findings of fact support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence exists when a fair-minded person is persuaded of the truth of the stated premise. *Garvin*, 166 Wn.2d at

---

[3] Because we find the trial court erred by excluding the evidence, we do not reach the State's argument that, even if the search was improper, Ketchum may not benefit from the exclusionary rule.

[4] Ketchum argues that the State failed to assign error to any findings of facts, and therefore, they are all verities on appeal. This is incorrect. The State assigns error to the trial court's "finding that Trooper Allen [Nelson] did not consider alternatives to impoundment of the vehicle." Br. of Appellant at 2.

249. On a motion to suppress, we review a trial court's conclusions of law de novo. *State v. Baird*, 187 Wn.2d 210, 218, 386 P.3d 239 (2016).

Because we presume that a warrantless search violates the Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington Constitution, the State must prove the search fits within one of the narrowly drawn exceptions to the warrant requirement. *Baird*, 187 Wn.2d at 218. One such exception is a noninvestigatory, good faith inventory search in conjunction with the impoundment of a vehicle. *State v. Tyler*, 177 Wn.2d 690, 700-01, 302 P.3d 165 (2013). An inventory search is lawful only if the impoundment of the vehicle is also lawful. *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016).

Impoundment is lawful when (1) the vehicle is evidence of a crime, (2) the officer is exercising a community caretaking function, or (3) "the driver committed a traffic offense for which the legislature has expressly authorized impoundment. *Tyler*, 177 Wn.2d at 698. When a law enforcement officer has a lawful reason to impound a vehicle for any of the three purposes, he or she may only impound that vehicle if no reasonable alternatives to impoundment exist. *Tyler*, 177 Wn.2d at 698. An officer need not consider all possible alternatives to impoundment and reasonableness must be assessed by the facts of each case. *Tyler*, 177 Wn.2d at 699.

Under the community caretaking function, an officer, prior to impoundment, must determine that (a) the vehicle must be moved because the vehicle is a threat to public safety or the vehicle is at risk of vandalism or theft of its contents, and (b) "the defendant, the defendant's spouse, or friends are not available to move the vehicle." *Tyler*, 177 Wn.2d at 698. However, when an officer impounds a vehicle for a reason other than the community caretaker function,

the State is not required to establish that the driver's spouse or friends are not able to move the vehicle. *State v. Froehlich*, 197 Wn. App. 831, 840, 391 P.3d 559 (2017).

Our courts have held that when an officer was acting under a statutory authority to impound because the driver had a suspended license, the owner of the vehicle was not at the scene, and there was no inquiry into whether someone could come move the vehicle, the impoundment and resulting inventory search were lawful. *State v. Peterson*, 92 Wn. App. 899, 902-03, 964 P.2d 1231 (1998). In *Peterson*, the defendant was pulled over while driving a friend's vehicle. *Peterson*, 92 Wn. App. at 900. The defendant was the sole occupant of the vehicle. *Peterson*, 92 Wn. App. at 901. Learning that the defendant's license was suspended, the officer impounded the vehicle, searched it, and found a controlled substance. *Peterson*, 92 Wn. App. at 900. The officer did not attempt to contact the vehicle's owner before deciding to impound it. *Peterson*, 92 Wn. App. at 901. The court held that the impoundment was lawful because there were no passengers to remove the vehicle and the vehicle "owner was not present to authorize a licensed and insured driver to remove the vehicle or to authorize leaving the vehicle by the side of the road." *Peterson*, 92 Wn. App. at 903.

B.      *Impoundment of the Vehicle Driven by Ketchum*

Here, the trial court found, "The trooper told Ketchum he had to impound his vehicle because he was driving with license suspended and had warrants for driving with license suspended." Clerk's Papers (CP) at 12. This finding specifies that Trooper Nelson was impounding according to statutory authority and not based on the community caretaking function. The facts here align with the statutory authority exercised in *Peterson*. *See Peterson*, 92 Wn. App. at 902-03. As a result, Trooper Nelson was not obligated to meet the additional

7

requirements of inquiring about or contacting a spouse or friend to remove the vehicle because the community caretaking function was not implicated. Rather, here, the State needed to prove only that Trooper Nelson considered alternatives to impoundment and made the decision to impound after determining none of the alternatives were reasonable.

The trial court noted that "[t]he trooper testified he had no reasonable alternatives to impounding the vehicle, since it would have been unsafe to leave the vehicle where it was due to hazardous road conditions and it would have been unsafe for the officers to attempt to move the vehicle." CP at 13. Put another way, the trial court found that Trooper Nelson considered two alternatives: (1) leaving the vehicle on the side of the road and (2) moving the vehicle with his fellow officer. After considering the road and weather conditions and the time of day, Trooper Nelson concluded leaving the vehicle on the side of the state highway was unreasonable. Further, because only two officers were available, it was unreasonable for the officers to move the vehicle themselves. Doing so would leave a law enforcement vehicle unattended and it was not feasible to fit two officers plus Ketchum in one law enforcement vehicle. After considering the options, Trooper Nelson concluded no reasonable alternatives to impoundment existed.

The trial court concluded that "[h]ere the record does not establish that the trooper considered alternatives to impoundment, since he did not ask Mr. Ketchum about the availability of anyone he might know who could move the vehicle." CP at 14-15. Although a reasonable alternative could have also included asking Ketchum for the name of someone in the vicinity who could move the vehicle, *see State v. Hardman*, 17 Wn. App. 910, 914, 567 P.2d 238 (1977), the State was not required to do so here. An officer need not consider all possible alternatives to impoundment, and we assess reasonableness by the facts of each case. *Tyler*, 177 Wn.2d at 699.

8

Here, the trial court misapplied the law by using the incorrect legal standard. The trial court concluded that contacting someone to move the vehicle is a *required* reasonable alternative for a statutorily authorized impoundment. This conclusion impermissibly applies a community custody standard to statutory authority to impound, a separate category of impoundment. Moreover, the correct test—that the officer need only consider reasonable alternatives before impounding the vehicle—is met. We hold that the trial court's conclusions regarding reasonable alternatives in this case erroneously apply the law.

Trooper Nelson, acting under statutory authority to impound the vehicle, considered alternatives to impoundment but ultimately concluded that impoundment was the only reasonable option. Thus, the findings of fact show that the motion to suppress should not have been granted on these grounds.

C.      *Waiver of Civil Claim as a Reasonable Alternative*[5]

Ketchum argues, as an alternate basis to affirm the trial court, that "absent the officer first giving either the defendant or the owner of the vehicle the option of waiving a [civil] claim against the state, there is no legal basis to perform an inventory search even if there is a basis to impound the vehicle." Br. of Resp't at 11. We disagree.

Although the purpose of an inventory search is to insulate law enforcement from civil liability, "the car owner cannot waive an inventory [search] after the proper impoundment of a car." *State v. Tyler*, 166 Wn. App. 202, 212-13, 269 P.3d 379 (2012).

---

[5] Ketchum did not raise this issue in the trial court, but asserts that he can raise this issue for the first time on appeal because we may affirm on any grounds under RAP 2.5(a).

No. 51062-6-II

Setting aside the fact that Ketchum provides no argument or authority that he, as a mere possessor, had the legal ability to waive the owner's claims, Ketchum's argument blends the requirements of an impoundment with the resulting inventory search. Because the car was properly impounded, neither Ketchum nor the owner of the car was entitled to waive civil liability in lieu of an inventory search. As a result, Trooper Nelson was not required to provide an opportunity to waive a civil claim and Ketchum's argument fails.

Trooper Nelson properly impounded the vehicle and lawfully conducted an inventory search. As a result, we hold that the trial court erred when it ordered the evidence suppressed.

We reverse the suppression order and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Sutton, J.

10