# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Appellant,<br><br>vs.<br><br>MARTHA E. FROEHLICH,<br><br>Respondent. | No. 48026-3-II<br><br>PUBLISHED OPINION |

MAXA, A.C.J. – The State appeals the trial court's suppression of methamphetamine discovered in a search of Martha Froehlich's vehicle following a car accident and the subsequent dismissal of the unlawful possession of a controlled substance charge against her. The State claims that the search was a lawful inventory search following the impoundment of Froehlich's vehicle.

We hold that impoundment was not lawful and therefore the search was not lawful because (1) under the community caretaking exception, the State did not prove that the impounding officer considered whether Froehlich, her spouse, or her friends were available to remove the vehicle; and (2) even though there was statutory authority for impoundment, the State failed to prove that the impounding officer considered all reasonable alternatives.[1]

---

[1] Froehlich also argues that the officer exceeded the scope of a lawful inventory search by unzipping and searching her purse. Because we affirm on other grounds, we do not address this issue.

Accordingly, we affirm the trial court's suppression of the methamphetamine and dismissal of the unlawful possession charge against Froehlich.

FACTS

On July 8, 2013, Froehlich was driving a car southbound on State Route 3 in Mason County when she collided with a pickup truck waiting at a stop sign at a very busy intersection. She was alone in the car. After the collision, the car came to rest on the right shoulder of the highway approximately 100 feet from the intersection. The car was approximately one to two feet from the fog line and its right side was up an embankment, but it was not obstructing traffic.

When Washington State Patrol Trooper Adam Richardson arrived at the scene, Froehlich was seated in the pickup truck that she had hit. Richardson observed the car's position on the side of the road. He also noted that the sunroof and driver's side window of Froehlich's car were open and the driver's door could not be opened. Froehlich was cooperative and gave Richardson permission to look in her car for the registration. He could not find the registration, but he did find a title showing that Froehlich was not the car's owner. When Richardson asked about the car's owner, Froehlich replied that it was not her vehicle.

Richardson questioned Froehlich about potential drug use and did not believe her denials. Another trooper arrived to administer field sobriety tests. Froehlich then requested an ambulance, which arrived about five minutes later. Froehlich left the scene in the ambulance. The other trooper followed Froehlich to the hospital and ultimately determined that she was not impaired.

During his interactions with Froehlich before she left in the ambulance, Richardson did not ask her what she wanted to do with the car or inquire about her ability to arrange for the car's removal.

At some point, Richardson determined that the car's location presented a traffic hazard because it impeded the visibility of drivers approaching a very busy intersection and created a distraction. But he believed that it was impossible to remove the car without a tow truck. Richardson also observed valuables located in plain view in the car. He concluded that he could not secure the car in its current location.

Because of his concerns about leaving an unsecured car that contained exposed valuables and the fact that the car was a traffic hazard, Richardson decided to impound Froehlich's vehicle. He made this decision without asking Froehlich what she wanted to happen to the car or discussing any alternatives to impound with her. Both the trial court's findings and the record are unclear whether Richardson made these observations and decisions before or after Froehlich left the scene.

Richardson testified that he considered reasonable alternatives to impoundment. But the trial court did not enter any finding of fact that Richardson in fact considered reasonable alternatives.

Richardson began an inventory of the vehicle. He retrieved a purse in plain view, intending to take it to Froehlich at the hospital if it was hers or to include it in the inventory if it was not. He unzipped the purse and discovered a bag of white powder he suspected was methamphetamine. Field testing confirmed his suspicions and he ceased the inventory search

and applied for a search warrant. After obtaining the warrant, Richardson completed his search and a tow truck removed the vehicle from the scene.

The State charged Froehlich with unlawful possession of a controlled substance with intent to manufacture or deliver. Froehlich filed a motion to suppress the methamphetamine, arguing in part that Richardson had no lawful basis for impounding the car and failed to consider reasonable alternatives to impoundment. The trial court heard testimony and entered findings of fact and conclusions of law.

The trial court ruled that Richardson did not lawfully impound the vehicle as part of his community caretaking function because he did not ask Froehlich about her ability to arrange for the removal of her car despite her ability to respond to such an inquiry. The trial court also ruled that Richardson had no statutory authority to impound the vehicle. Therefore, the trial court concluded that the State failed in its burden of showing a lawful impoundment and granted the motion to suppress. The trial court then entered an order dismissing the unlawful possession charge against Froehlich.

The State appeals the trial court's suppression of the methamphetamine and by implication the trial court's dismissal of the unlawful possession charge.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Standard of Review

When reviewing a suppression order, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is

enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We treat unchallenged findings of fact as verities on appeal. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009). We review de novo the trial court's conclusions of law. *Garvin*, 166 Wn.2d at 249.

2. Search of Impounded Vehicle

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches unless one of the narrow exceptions to the warrant requirement applies. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015), *review denied*, 185 Wn.2d 1032 (2016).

One exception to the warrant requirement is a noninvestigatory, good faith inventory search of an impounded vehicle. *State v. Tyler*, 177 Wn.2d 690, 700-01, 302 P.3d 165 (2013). However, an inventory search of an impounded vehicle is lawful only if the officer lawfully impounded the vehicle. *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016). The State has the burden of establishing this exception. *Tyler*, 177 Wn.2d at 698.

Law enforcement may lawfully impound a vehicle for three reasons: (1) as evidence of a crime, (2) under the community caretaking function, or (3) when the driver has committed a "traffic offense for which the legislature has expressly authorized impoundment." *Id.*

But even if one of these reasons exists, an officer may impound a vehicle only if there are no reasonable alternatives. *Id.* at 698-99. "[I]f . . . a reasonable alternative to impoundment exists, then it is unreasonable to impound a citizen's vehicle." *Id.* at 698. Therefore, an officer must consider alternatives to impoundment, although the officer "does not have to exhaust all possible alternatives." *Id.* at 699. Considering reasonable alternatives may include obtaining a

name from the driver of someone in the vicinity who could move the vehicle. *State v. Coss*, 87 Wn. App. 891, 899, 943 P.2d 1126 (1997). Whether an impoundment is reasonable depends on the facts of each case. *Tyler*, 177 Wn.2d at 699.

B.      LAWFUL IMPOUNDMENT UNDER COMMUNITY CARETAKING FUNCTION

The State argues that Richardson's impoundment of Froehlich's car was lawful under the community caretaking function. We disagree.

    1.    Legal Principles

The community caretaking function allows law enforcement to lawfully impound a vehicle when both (1) "the vehicle must be moved because it has been abandoned, impedes traffic, or otherwise threatens public safety or if there is a threat to the vehicle itself and its contents of vandalism or theft;" *and* (2) "the defendant, the defendant's spouse, or friends are not available to move the vehicle." *Tyler*, 177 Wn.2d at 698. In addition, as noted above, there must be no reasonable alternative to impoundment for the impoundment and the subsequent search to be lawful. *Id.* at 698-99.

The trial court ruled that the first community caretaking requirement was satisfied because the car impeded traffic and threatened public safety. Froehlich does not dispute this ruling. The issue here involves the second requirement, whether Froehlich, her spouse, or her friends were available to move the vehicle.

    2.    Defendant's Ability to Arrange for Removal

How strictly the second community caretaking requirement stated in *Tyler* should be applied is somewhat unclear. We can conceive of circumstances where it would be reasonable for an officer to impound a vehicle even though he or she may not know the availability of the

defendant or the defendant's spouse or friends to remove a vehicle or when removal by those persons would be impractical. However, *Tyler* suggests that an officer should at least *consider* whether the defendant can make arrangements for someone to remove the vehicle before impounding it. Otherwise, the second community caretaking requirement would be superfluous.

Here, the trial court made unchallenged findings of fact that during Richardson's interactions with Froehlich at the scene, he did not ask her what she wanted to do with the car – including her ability to arrange for its removal – or discuss with her any alternatives to impoundment. There also is no indication in the trial court's findings or in the record that Richardson attempted to contact his fellow trooper, who was at the hospital with Froehlich, to have him ask Froehlich about removing the car.

The State argues that under the facts of this case, specifically the hectic accident scene and Froehlich being taken away by ambulance, Richardson had no opportunity to consider Froehlich's ability to arrange for the car's removal. But the trial court's unchallenged findings of fact show that Richardson was able to converse with Froehlich on several issues when he arrived at the scene and that she remained available at the scene for five minutes after an ambulance was called. And the record shows that another trooper had contact with Froehlich even after she left the scene.

The dissent references the fact that the car had to be towed from the scene because it was not drivable, apparently suggesting that Richardson had no choice but to impound the car. But under *Tyler*, even though the car had to be towed, Richardson should have at least considered whether Froehlich could arrange for the towing.

7

We hold that under the circumstances of this case, the trial court's findings of fact support its conclusion of law that the State did not satisfy the second community caretaking requirement.

### 3.    Availability of Vehicle Owner

The State suggests that Richardson was not required to ask Froehlich about removing the car because she did not own the car and that he had no duty to seek out the registered owner. The State relies on *State v. Peterson,* 92 Wn. App. 899, 964 P.2d 1231 (1998), and *State v. Ferguson*, 131 Wn. App. 694, 128 P.3d 1271 (2006), two cases in which impoundments were deemed lawful even though the police officers did not contact the registered owners of the vehicles when no one was available on the scene to drive the vehicles.

But these cases are distinguishable. *Peterson* involved an officer's statutory authority to impound a vehicle when the driver had a suspended license and the owner was not at the scene, not the community caretaking function. 92 Wn. App. at 902-03. Therefore, the State was not required to establish, as here, that the driver's spouse and friends were not available to move the vehicle. And the questions in *Ferguson* involved the first community caretaking requirement – whether the vehicle needed to be towed – and whether waiting for the vehicle's out-of-state owner to come and remove the vehicle was a reasonable alternative to impoundment. 131 Wn. App. at 702. The court did not address the second community caretaking requirement at issue here.

More fundamentally, as the community caretaking rule is stated in *Tyler*, ownership of the vehicle is not necessarily material when a nonowner is driving. The second community caretaking requirement is that "the *defendant*, the *defendant's* spouse, or friends are not available

8

to move the vehicle." *Tyler*, 177 Wn.2d at 698 (emphasis added). Froehlich is the defendant here. Therefore, under *Tyler* the State was required to show that *Froehlich* or *Froehlich's* spouse or friends were unavailable to move the car, not merely that the owner was unavailable.

### 4. Summary

For the impoundment of Froehlich's car to be lawful under the community caretaking function, Richardson was required to at least consider whether Froehlich, her spouse, or her friends were available to move the car from the scene. Froehlich was unavailable after she left the scene in an ambulance. But the evidence is undisputed that Richardson never asked Froehlich about arranging to have someone else remove the car as an alternative to impoundment, and the State presented no evidence that Richardson considered Froehlich's ability to arrange for the car's removal. As a result, we hold that Richardson's impoundment of Froehlich's car was not lawful under the community caretaking function.

## C. LAWFUL IMPOUNDMENT UNDER STATUTORY AUTHORITY

The State argues that even if impoundment was improper under the community caretaking function, Richardson had statutory authority under RCW 46.55.113 for impounding Froehlich's car because it was unattended. We agree. But we hold that despite the statutory authority, the impoundment of Froehlich's car was unlawful under *Tyler* because Richardson did not consider reasonable alternatives.

### 1. Legal Principles

#### a. Impoundment Statute

The legislature has expressly authorized impoundment in RCW 46.55.113 under several circumstances. RCW 46.55.113(2) provides:

> [A] police officer may take custody of a vehicle, at his or her discretion, and provide for its prompt removal to a place of safety under any of the following circumstances:
>
> . . . .
>
> (b) Whenever a police officer *finds a vehicle unattended upon a highway* where the vehicle constitutes an obstruction to traffic or jeopardizes public safety;
>
> (c) Whenever a police officer *finds an unattended vehicle at the scene of an accident* or when the driver of a vehicle involved in an accident is physically or mentally incapable of deciding upon steps to be taken to protect his or her property.

RCW 46.55.113(2)(b), (c) (emphasis added).

This statute seems to fall within the express statutory authorization reason for impoundment identified in *Tyler*. 177 Wn.2d at 698. *Tyler*'s third reason for impoundment refers to statutory authorization for impoundment when the driver has "committed a traffic offense." RCW 46.55.113(2)(b) and (c) do not necessarily involve traffic offenses. But we interpret *Tyler*'s third reason as referring to any express statutory authorization for impoundment.

However, as noted above, even if the statute applies there must be no reasonable alternative to impoundment for the impoundment and the subsequent search to be lawful. *Id.* at 698-99.

b. Principles of Statutory Construction

We review the meaning of a statute de novo. *State v. Wooten*, 178 Wn.2d 890, 895, 312 P.3d 41 (2013). We employ statutory interpretation to determine and give effect to the legislature's intent. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). To determine legislative intent, we first look to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole. *Id.* We consider traditional rules of grammar in discerning the plain language of the statute. *State v.*

*Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). We give undefined terms their plain and ordinary meaning unless a contrary legislative intent is indicated. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

    2.    Applicability of RCW 46.55.113(2)(b) and (c)

Here, the vehicle Froehlich had been driving was not unattended when Richardson arrived at the scene. At that point, RCW 46.55.113(2)(b) and (c) clearly did not apply. But the vehicle became unattended once Froehlich left in the ambulance. The State argues that these provisions apply when a vehicle becomes unattended during the course of an accident investigation through circumstances the officer does not create.

Froehlich focuses on the word "finds," claiming that this word refers to the time when an officer first encounters a vehicle. She argues – and the trial court ruled – that because she was present, Richardson did not "find" an unattended vehicle when he arrived on the scene.

However, the statute does not state that impoundment is limited to situations where a vehicle is unattended when an officer *initially* encounters it. The statute does not expressly preclude impoundment for unattended vehicles that previously were attended. Instead, both subsections authorize impoundment "[w]henever" an officer finds an unattended vehicle. After Froehlich left the scene, Richardson "found" that her car was unattended regardless of whether it was attended earlier.

In interpreting these provisions we must give effect to the legislature's intent. *Evans*, 177 Wn.2d at 192. The stated intent of RCW 46.55.113(2)(b) is to avoid traffic obstructions and to promote public safety by allowing an officer to clear unattended vehicles from highways. Presumably, RCW 46.55.113(2)(c) has a similar purpose. If the goal is public safety, it makes

no difference whether a vehicle was unattended when the officer arrived at the scene or became unattended later. In both situations, an unattended vehicle may present a public safety risk. There is no indication in the statutory language that the legislature intended to authorize impoundment only when the vehicle is unattended when the officer first arrives.

There are no cases addressing *when* a vehicle must be unattended for RCW 46.55.113(2)(b) and (c) to apply. However, the court in *Tyler* suggested without discussion that RCW 46.55.113(2)(b) applied to authorize impoundment even though in that case the vehicle's driver was present at the scene before being arrested. 177 Wn.2d at 700.

Froehlich's car became unattended when she left for the hospital through circumstances that Richardson did not create. The car was upon a highway and had been involved in an accident. Therefore, we hold that RCW 46.55.113(2)(b) and (c) provided statutory authority for Richardson to impound the vehicle and that the trial court erred in ruling that these provisions did not apply.

3. Reasonable Alternatives to Impoundment

Even though the trial court erred in ruling that RCW 46.55.113(2)(b) and (c) did not apply here, we can affirm a trial court's decision on any correct basis. *State v. Vanderpool*, 145 Wn. App. 81, 85, 184 P.3d 1282 (2008). Froehlich argues that Richardson's impoundment of her vehicle was unlawful under *Tyler* because Richardson did not consider reasonable alternatives to impoundment. We agree.

The trial court did not make an express finding or conclusion on the existence of a reasonable alternative, but did tangentially address the issue. The trial court found that Richardson did not discuss any alternatives to impoundment with Froehlich. And in its conclusion of law regarding the second community caretaking requirement, the trial court

distinguished this case from *Tyler* because in *Tyler* the officer explored reasonable alternatives to impoundment.

Richardson testified that he explored alternatives to impounding Froehlich's car, although he did not explain what alternatives he explored. But the trial court did not make any finding that Richardson considered alternatives. And Richardson also admitted that this process did not include asking Froehlich about any other alternatives. One of the alternatives that an officer should consider is asking the driver if arrangements can be made for someone to move the vehicle. "Although an officer is not required to exhaust all possibilities, the officer must at least consider alternatives; attempt, if feasible, to obtain a name from the driver of someone in the vicinity who could move the vehicle." *Coss*, 87 Wn. App. at 899. Richardson's failure to ask Froehlich about alternatives showed that he did not consider reasonable alternatives to impoundment.

We acknowledge that there may be situations when an officer has no obligation to ask a driver about reasonable alternatives to impoundment. But here, the trial court entered unchallenged findings that Richardson had the opportunity to have discussions with Froehlich on several issues before she left the scene. Under the specific facts of this case, we hold that Richardson had an obligation to ask Froehlich about other alternatives to impounding the car and therefore that the State did not satisfy its burden under *Tyler* of establishing that Richardson considered reasonable alternatives to impoundment. 177 Wn.2d at 698-99.

Accordingly, we hold that even though Richardson's impoundment of Froehlich's car was authorized under RCW 46.55.113(2)(b) and (c), the impoundment was not lawful because Richardson did not consider reasonable alternatives.

13

No. 48026-3-II

CONCLUSION

The trial court did not err in finding that the State failed to meet its burden of showing that an exception to the constitutional warrant requirement applied in this case. Under the facts of this case, Richardson's impoundment of Froehlich's car was unlawful under both the community caretaking function and RCW 46.55.113(2)(b) and (c). Because Richardson unlawfully impounded the vehicle, his seizure of methamphetamine from Froehlich's purse was unlawful.

We affirm the trial court's suppression of the methamphetamine and dismissal of the State's unlawful possession charge against Froehlich.

_____
MAXA, A.C.J.


I concur:

_____
JOHANSON, J.

14

Melnick, J. (dissent) — Because the facts of this case demonstrate that the officer acted lawfully and reasonably in impounding and searching Martha Froehlich's vehicle, I respectfully dissent. I would reverse the trial court's dismissal and reach Froehlich's argument regarding the legality of the inventory search.

As relevant to this case, law enforcement may impound a vehicle under the community caretaking function or pursuant to statutory authority. *State v. Tyler*, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). Under either situation, law enforcement can impound a vehicle only if no reasonable alternatives exist. *Tyler*, 177 Wn.2d at 698. "The police officer does not have to exhaust all possible alternatives, but must consider reasonable alternatives." *Tyler*, 177 Wn.2d at 699. The "[r]easonableness of an impoundment must be assessed in light of the facts of each case." *Tyler*, 177 Wn.2d at 699.

Inventory searches on lawfully impounded vehicles are constitutional when police follow their procedures and do not use the search as a pretext for an evidentiary search. *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976)[2] (inventory search after impound on illegally parked car upheld where personal items visible in car). Inventory searches are based on reasonableness and are to be distinguished from searches based on probable cause. *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983).

When done in good faith, the purposes of an inventory search are to find, list, and secure property and to protect law enforcement and storage bailees from dishonest claims of theft. *State*

---

[2] Arguably Washington has dispensed with the portion of the test determining if law enforcement followed procedures. *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980). In this case, it does not matter since the trial court found that Trooper Richardson followed police procedures and nobody challenges that finding.

*v. Houser*, 95 Wn.2d 143, 154, 622 P.2d 1218 (1980). The scope of an inventory search is "limited to protecting against substantial risks to property." *Houser*, 95 Wn.2d at 155.

I.      IMPOUND UNDER COMMUNITY CARETAKING FUNCTION

The majority relies on the two part test in *Tyler* to arrive at its conclusion that the impound was improper. 177 Wn.2d at 698. The majority correctly states that the vehicle driven by Froehlich had to be moved under the "community caretaking function" because it had been abandoned, impeded traffic, threatened public safety, or a threat existed to the contents because of vandalism or theft.

I believe that the majority's reliance on the second part, i.e. the defendant, the defendant's spouse, or friends are not available to move the vehicle is misplaced. The police are neither required to ask the driver, in the circumstance of this case, about the availability of someone else to remove the car nor are they required to call people who are not at the scene of the vehicle impound and wait for them to respond. In *Tyler*, a deputy stopped the defendant for speeding and discovered his license was suspended. 177 Wn.2d at 694. The deputy arrested the defendant and allowed the passenger to try to find someone to drive the vehicle. *Tyler*, 177 Wn.2d at 695. No one was available and the deputy called a tow truck to impound the car based on road safety. *Tyler*, 177 Wn.2d at 696. While waiting for the tow truck, the deputy performed an inventory search which our Supreme Court affirmed. *Tyler*, 177 Wn.2d at 696, 716.

*Tyler* relies heavily on *Houser*. In *Houser*, the vehicle was in the defendant's possession and was not abandoned. 95 Wn.2d at 152. The police arrested him in his vehicle. *Houser*, 95 Wn.2d at 152. No evidence existed that it impeded traffic or that it could not have been driven to a place where it would not impede traffic. *Houser*, 95 Wn.2d at 152. The court held the

impoundment of the vehicle was unreasonable and said, "It is unreasonable to impound a citizen's vehicle *following his or her arrest* when there is no probable cause to seize the car and where a reasonable alternative to impoundment exists." *Houser*, 95 Wn.2d at 153 (emphasis added). In *Tyler*, the court cited to this portion of *Houser* but said, "if there is no probable cause to seize the vehicle and a reasonable alternative to impoundment exists, then it is unreasonable to impound a citizen's vehicle." *Tyler*, 177 Wn.2d at 698. However, the validity of impoundment is not based on probable cause, it is based on reasonableness.[3]

*Tyler* and *Houser* are factually dissimilar from the present case. They both relied on the arrest of the driver. Here, Froehlich was not arrested or detained. She voluntarily left the scene after requesting an ambulance. She was not present when the trooper seized the vehicle.

In addition, the majority's reliance on *State v. Coss*, 87 Wn. App. 891, 943 P.2d 1126 (1997), is misplaced based on distinguishable facts. There, the driver had a suspended license; however, the passengers in the vehicle were not given the opportunity to drive the car from the scene. *Coss*, 87 Wn. App. at 899. In our case, Froehlich did not have passengers.

Rather, our case is more similar to *State v. Peterson*, 92 Wn. App. 899, 901, 964 P.2d 1231 (1998), where the driver was alone in the car. The officer did not arrest Peterson for driving with a suspended license, but did impound the vehicle. *Peterson*, 92 Wn. App. at 901. In distinguishing *Coss,* we held,

> It was unreasonable for the officer to impound the vehicle in *Coss* without determining whether these passengers could legally have driven the car from the scene or safely made other arrangements for it. Here, the owner was not present to authorize a licensed and insured driver to remove the vehicle or to authorize leaving the vehicle by the side of the road. . . . The impoundment was the best approach to

---

[3] In both *Tyler* and *Houser*, law enforcement had probable cause to arrest the drivers but no probable cause existed to search their vehicles.

protect the police and the property owner and was reasonable under these circumstances.

*Peterson*, 92 Wn.2d at 903. Here, Froehlich, not the owner of the vehicle, voluntarily left the scene and was not present to authorize another person to move the vehicle. In addition, the uncontroverted evidence showed that the vehicle could only be removed with a tow truck and it presented a traffic hazard because it impeded the visibility of drivers approaching a very busy intersection and created a distraction. Leaving it at the scene was not a reasonable option.

I disagree with the majority's characterization of *Peterson*. Although it did not involve the community caretaking function, we clearly decided the case on whether or not the police acted reasonably in impounding the vehicle and conducting an inventory search. *See Peterson*, 92 Wn. App. at 902-03. Whether or not the impound is based on the "community caretaking function" or a statute, the lawfulness of the impoundment will be upheld only if no reasonable alternatives exist. *Tyler*, 177 Wn.2d at 698-99.

Likewise, in *State v. Ferguson*, 131 Wn. App. 694, 698, 128 P.3d 1271 (2006), the trooper stopped the vehicle and determined the driver had a valid arrest warrant. The trooper would not allow the seventeen year old passenger to drive the car because she could not produce identification and the trooper could not find a driver's record for her. *Ferguson*, 131 Wn. App. at 698. The trooper did not attempt to contact the out-of-state owner of the vehicle. *Ferguson*, 131 Wn. App. at 698. He decided to impound the vehicle because it blocked an intersection and the registered owner was not present. *Ferguson*, 131 Wn. App. at 698. We upheld the subsequent inventory search. *Ferguson*, 131 Wn. App. at 697, 706.

The facts of this case demonstrate that Trooper Richardson acted reasonably. He arrived at the scene of an accident. He noted that Froehlich's vehicle posed a traffic hazard, could not be

operated, and could only be removed by a tow truck. Trooper Richardson observed valuables in plain view in the unsecured vehicle where both the sunroof and a window were open. Froehlich admitted the vehicle was not hers. She requested an ambulance so she could be assessed for injuries. Five minutes after the request, an ambulance arrived, and it took Froehlich from the scene.

As recognized by the majority, Richardson considered alternatives to impoundment. No one was present at the scene to take possession of the vehicle and Froehlich did not indicate any alternatives existed. She expressed no concerns about the vehicle. It would not have been safe for a person to remove the vehicle without a tow truck.

Under these circumstances it is clear that "the defendant, the defendant's spouse, or friends [were] not available to move the vehicle." *Tyler*, 177 Wn.2d at 698, and I would uphold the impoundment and inventory search. The majority, however, changes the test of *Tyler* to read the second requirement as "whether Froehlich, her spouse or her friends were available to move the vehicle." Majority at 6. Changing the law to put an affirmative duty on the police to see if people are available to move the vehicle is without precedent and contrary to *Tyler*.[4]

II.     IMPOUND PURSUANT TO STATUTORY AUTHORITY

I would also uphold the impoundment and inventory search under RCW 46.55.113(2)(b) and (c). I agree with the majority's interpretation that these provisions apply. I, again, part

---

[4] Assuming that the majority is correct that *Tyler* suggests an officer should consider whether Froehlich could make arrangements to remove the vehicle, it is clear that Richardson did make these considerations. The fact he did not ask her does not mean he did not consider the alternative. The fact he did not call the trooper who went to the hospital also does not mean he did not consider alternatives. It is unclear if the trooper remained with or had access to Froehlich at the hospital. Even if the trooper had such access, it would be unreasonable to have Richardson wait at the scene for an undetermined amount of time after Froehlich voluntarily abandoned the vehicle.

company with the majority because, for the reasons stated above, Trooper Richardson did consider reasonable alternatives to impoundment.

III.     CONCLUSION

The majority's holding that Trooper Richardson did not consider alternatives is incorrect. Rather, the majority seems to say that the only reasonable alternative was to ask Froehlich about arranging to have someone else remove the car. I respectfully dissent and would conclude that under the facts of this case, the police lawfully impounded the vehicle.

_____
Melnick, J.