IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,               )
                                       )     No. 76221-4-I
          Respondent,                  )
                                       )     DIVISION ONE
     v.                                )
                                       )     UNPUBLISHED OPINION
JONATHAN STEPHEN WOOD,                 )
                                       )
          Appellant.                   )     FILED: June 18, 2018
                                       )

APPELWICK, C.J. — Wood appeals his conviction for possession of a controlled substance with intent to manufacture or deliver, challenging the denial of his motion to suppress evidence obtained from the search of his car. He claims that the search was not a lawful inventory search prior to impounding his vehicle. He also argues that the trial court exceeded its statutory authority in imposing a $3,000 VUCSA[1] fine, and in imposing community custody conditions that were unconstitutionally vague and not crime-related. We reverse.

## FACTS

Around 6:30 a.m. on April 17, 2015, Washington State Patrol Trooper Anson Statema was on Interstate 5 (I-5) when he heard a 911 report that a blue Hyundai Sonata had been involved in a hit and run collision. Statema saw a vehicle matching that description and pulled the car over to the right shoulder of I-5, just south of the 44th Street onramp. The car was approximately two to three feet from

_____
[1] Violation of the Uniform Controlled Substances Act, chapter 69.50 RCW.

the fog line and in a tow zone. Statema spoke with the vehicle's driver, Jonathan Wood.

Wood initially denied being involved in the hit and run. While Statema was talking with Wood, Trooper Steve Palm arrived at the scene with the victim of the hit and run. Palm was the lead investigator for the collision, and Statema testified that he was assisting Palm at the scene. The other driver identified Wood's vehicle as the car that hit him. At 6:55 a.m., Statema saw what he believed was fresh damage on the front of Wood's car, and asked Wood to exit the vehicle so that he could show it to him. Wood admitted that he had been in an accident and left because he was late for work. Palm then arrested Wood for hit and run, put him in the back of his police car, and read him his Miranda[2] rights.

At 6:59 a.m., after Wood was arrested, Statema entered Wood's vehicle to conduct what he later claimed was an inventory search prior to impounding. Statema testified that he was looking for valuable items such as electronics to preserve them for Wood. Statema saw a cord running into the center console, so he looked inside it to see if the cord was connected to an electronic device. Inside the console Statema saw pills of various colors wrapped in individual packages, with about 10 pills in each "baggie." Believing that he had found evidence, Statema ended his inventory search and notified Trooper Palm.

At 7:07 a.m., Statema asked Palm if he was going to tow the vehicle. Palm told him, "Not right now." Statema ran Wood's license and discovered that it had been revoked in the first degree, and that he was required to have an ignition

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

interlock. Palm requested a tow truck at 7:16 a.m., and the vehicle was subsequently towed to the State Patrol evidence locker in Marysville.

On April 18, Palm obtained a search warrant for Wood's car based on the suspected contraband. While searching the car, Palm found several controlled substances, $997 in cash, a digital scale with drug residue, and two cell phones.

Wood was charged with possession of a controlled substance with intent to manufacture or deliver. At a CrR 3.6 hearing, he moved to suppress the evidence that was obtained from the search of his vehicle. He argued that the impoundment of his car was unlawful because the troopers did not explore any reasonable alternatives. He further claimed that the inventory search was unlawful because it "had nothing to do with taking inventory of an impounded vehicle." He asserted that the search was before troopers discovered his license was revoked in the first degree, and before they decided to impound the vehicle.

The trial court denied Wood's motion to suppress evidence. It found that the initial search of Wood's car was "to turn off the vehicle, to retrieve a phone for the defendant. . . . [S]o it was a mixed bag . . . of both a community caretaking function and an inventory search." It stated,

> [T]he decision to impound the vehicle and not release it to somebody else was perfectly justified under these circumstances. First, the car's running; secondly, the video shows clearly that it is a dangerous area. Cars are passing close to this vehicle in the travel portion of the freeway to the left of where the vehicle was stopped and parked. It was illegally parked because it's a 24-hour tow zone meaning that vehicles left there are subject to tow at any time.

It recalled that both troopers testified that "they may choose not to impound a vehicle, even where it's in a tow zone. They may choose to contact someone to

come get the vehicle." But, it found that the troopers' decision to impound the vehicle "was perfectly authorized, if not compelled, and certainly justified by the circumstances." It stated further that there was "no support in the evidence" that the search was a pretext to search for drugs.

Following a stipulated facts bench trial, Wood was convicted of possession of a controlled substance with intent to manufacture or deliver. The court imposed a standard range sentence of 30 months of confinement and 12 months of community custody. Wood appeals.

## DISCUSSION

### I. Suppression of Evidence

Wood argues that his conviction must be reversed because the evidence supporting it was discovered in violation of his constitutional right to be free from unreasonable searches and seizures. First, he asserts that the impoundment of his vehicle was unlawful because the troopers did not explore reasonable alternatives. Then, he argues that the inventory search was unlawful because it was an illegal impounding of his car, and the claimed inventory search was pretextual.

### A. Standard of Review

When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. Id. This court

reviews conclusions of law from an order pertaining to the suppression of evidence de novo. Id.

B. Impoundment

Warrantless searches of vehicles are per se unreasonable, in violation of article I, section 7 of our state constitution, subject to a few exceptions that are narrowly drawn. State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). One of these exceptions is a valid inventory search of an impounded vehicle. Id. at 698, 701. This is the exception that the State maintains justifies the search of the car that Wood was driving. The State bears the burden of establishing that this exception applies. Id. at 698.

Our Supreme Court has listed specific circumstances for when a vehicle may be lawfully impounded:

> (1) as evidence of a crime, when the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense; (2) under the "community caretaking function" if (a) the vehicle must be moved because it has been abandoned, impedes traffic, or otherwise threatens public safety or if there is a threat to the vehicle itself and its contents of vandalism or theft and (b) the defendant, the defendant's spouse, or friends are not available to move the vehicle; and (3) in the course of enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment.

Id. (emphasis omitted).

The State contends that Wood's car was lawfully impounded under the second and third circumstances. First, it contends that the troopers impounded Wood's car under the community caretaking function, because it presented a threat to public safety. It states that the car was "parked on a narrow shoulder" in

a "dangerous" area, at the end of a freeway onramp, where cars travelling at freeway speeds passed by the car very closely. Then it states that Wood could not move his vehicle because he was being arrested, and, without citation to the record, it states that "[n]o one else was immediately in the area who could move the vehicle once the investigation had been completed."

Second, the State argues the troopers validly impounded the car because they were enforcing traffic regulations and Wood committed a traffic offense for which the legislature has expressly authorized impoundment. It cites RCW 46.55.113(2)(b) and (d). RCW 46.55.113(1) states that whenever the driver of a vehicle is arrested for a violation of driving with an invalidated license, the vehicle is subject to summary impoundment. The statute also provides:

> (2) In addition, a police officer may take custody of a vehicle, at his or her discretion, and provide for its prompt removal . . .
>
> . . . .
>
> (b) Whenever a police officer finds a vehicle unattended upon a highway where the vehicle constitutes an obstruction to traffic or jeopardizes public safety
>
> . . . .
>
> (d) Whenever the driver of a vehicle is arrested and taken into custody by a police officer.

RCW 46.55.113(2)(b) and (d).

But, if there is no probable cause to seize the vehicle, impoundment is inappropriate when reasonable alternatives exist. Tyler, 177 Wn.2d at 698-99. In Tyler the court stated:

> The police officer does not have to exhaust all possible alternatives, but must consider reasonable alternatives. Reasonableness of an

6

impoundment must be assessed in light of the facts of each case. However, facts subsequent to impoundment do not bear on whether the impoundment was reasonable.

Id. at 699 (emphasis added) (citations omitted). There, the court found that the community caretaking function was "plainly implicated" because, if not impounded, the vehicle would have been left unattended very close to a very busy, congested single lane section of the highway. Id. And, the officer explored alternatives, including asking Tyler to loan his cell phone to the car's passenger to attempt to locate someone to move the car. Id. at 700. Our Supreme Court concluded that the impoundment was lawful, because the vehicle threatened public safety if left where it was, the driver had been arrested, and the officer had explored reasonable alternatives to impoundment. Id.

This case differs from Tyler, but closely resembles State v. Froehlich, 197 Wn. App. 831, 391 P.3d 559 (2017). In Froehlich, after hitting another car, the defendant left the scene of the car accident in an ambulance. 197 Wn. App. at 834-35. There was no evidence in the record that the officer at the scene or the one who accompanied Froehlich to the hospital asked her what she wanted to do with the car. Id. at 835, 839. The trooper at the scene decided to impound the vehicle and, while conducting an inventory search, discovered what he suspected was narcotics. Id. at 836.

In its analysis of the impoundment, Division II discussed the community caretaking rule:

> How strictly the second community caretaking requirement stated in Tyler should be applied is somewhat unclear. We can conceive of circumstances where it would be reasonable for an officer to impound a vehicle even though he or she may not know the

7

availability of the defendant or the defendant's spouse or friends to remove a vehicle or when removal by those persons would be impractical. However, <u>Tyler</u> suggests that an officer should at least <u>consider</u> whether the defendant can make arrangements for someone to remove the vehicle before impounding it. Otherwise, the second community caretaking requirement would be superfluous.

<u>Id.</u> at 839. And, in discussing the "reasonable alternatives" rule to statutory impoundment, the court stated, "One of the alternatives that an officer should consider is asking the driver if arrangements can be made for someone to move the vehicle." <u>Id.</u> at 845. The court held that police unlawfully impounded Froehlich's car under the community caretaking function, because there was no evidence that the officer considered the defendant's ability to arrange for the car to be moved from the scene. <u>Id.</u> at 841. And, it held that even though the impoundment was authorized by statute, it was unlawful because the officer did not consider reasonable alternatives. <u>Id.</u> at 845-46.

Likewise here, neither trooper asked Wood what he wanted to do with the car or discussed any alternatives to impoundment with him before Statema entered the vehicle to search. Both troopers also testified that they did not consider alternatives to impoundment appropriate. Statema testified that he did not think, in this circumstance, it was appropriate to call another driver to retrieve the car, explaining,

> Typically, the times where we would consider having another driver come would be a situation where a person's license was simply not valid, if it was suspended third degree, or lower degree of suspension. If they were being -- if there was some other reason that they couldn't drive, I don't know what those would be, but just other circumstances. But, generally speaking, hit and run collisions where that person is a registered owner and license revocations are ones where that we would pretty much always impound the vehicle unless there is some large circumstance against it.

8

He also testified that he did the inventory search <u>before</u> he checked the status of Wood's license and discovered that it was revoked in the first degree and learned that Wood was required to have an ignition interlock. When asked if he would "have considered having someone else come to the scene" to remove the vehicle, Trooper Palm answered "no" stating,

> Because of the time of the day, rush hour, like I've said before, 24-hour tow zone. That area that we're in, we're bringing more people to the scene, that means more people out of their cars on the narrow shoulder.

As in <u>Froehlich</u> where the officer spoke with the defendant on several issues but never asked her about removing the car, here both troopers spoke with Wood, but never asked him what he wanted to do with the car. Trooper Statema entered Wood's car and began searching a mere four minutes after he asked Wood to step out of the car, and only one minute after Wood was arrested.

The State argues that the impoundment was reasonable under the community caretaking function for two main reasons. First, it contends that "unlike in <u>Froehlich</u>[,] the defendant's vehicle did present an imminent danger to the public." In <u>Froehlich</u>, the car was on the shoulder of a highway, 100 feet from a "very busy intersection," and one to two feet from the fog line. 197 Wn. App. at 834-35. Here, Wood's car was on the shoulder of I-5, just south of the 44th Street onramp, and approximately two to three feet from the fog line. The State's argument is unpersuasive that Wood's car posed a danger greater than that of the car in <u>Froehlich</u>. And, even if Wood's car was in a more dangerous location than

the vehicle's location in Froehlich, that does not negate the officers' duty to consider reasonable alternatives to impoundment under Tyler.

Second, the State argues that the officer's entry into Wood's car was also justified because the car was running when Wood was arrested. There is no mention of this in the written findings of fact and conclusions of law, but the State asks this court to consider this justification anyway. A trial court's oral ruling "may be considered in interpreting the findings of fact and conclusions of law, but they cannot be considered as the basis for the trial court's judgment and sentence." State v. Mallory, 69 Wn.2d 532, 533, 419 P.2d 324 (1966). The trial court mentioned the reasoning in passing in its oral ruling:

> But the fact that the police have discretion doesn't mean that the exercise of their discretion here to arrest [Wood] for hit and run and to impound his vehicle is somehow unlawful. And that doesn't mean that because the police happened to find drugs when they're looking in the console to retrieve his phone or to see if they can get a key fob to turn the vehicle off that somehow what is purported to be an inventory search isn't an inventory search.
>
> It's also probably a part of a community caretaking function.

And later, the court commented "the car's running" and that the "initial search, as I mentioned, was to turn off the vehicle, to retrieve a phone for the defendant."

Statema's testimony at the suppression hearing did not establish that he entered the car to look for the key fob to turn off the car. He testified that, upon entering the car he

> [s]tarted looking for electronic devices, first of all. I didn't see a GPS up on the console or anything like that. I did notice that the vehicle was a push start type of vehicle.

And, Statema testified that he did not know if the electronic key fob "was in the car or if Mr. Wood had it on his person." Even if entering the car to turn it off was proper under the community caretaking function, this does not support the trooper's choice to look in the center console. Statema did not testify that he went into the car to turn it off. And, even if that was his purpose, the officer did not need the key fob to turn off the car,[3] nor did he ask Wood if he had the key fob on him before he entered the car. The record is insufficient to affirm the trial court's denial of the suppression on this basis. The State bears the burden of establishing that this was a valid inventory search of an impounded vehicle, and it cannot meet its burden on this record. See Tyler, 177 Wn.2d at 698.

For the impoundment of Wood's car to be lawful under the community caretaking function, the troopers were required to at least consider whether Wood's spouse or friends were available to move the car from the scene. Palm testified that he would not have considered bringing someone to the scene to retrieve the car because the area was too dangerous. Even if the trooper thought it was too dangerous for a friend or family member to come retrieve the vehicle, allowing Wood to arrange private towing would have been an alternative to impound, as the court noted in Froehlich. See 197 Wn. App. at 840. A private tow would have obviated the need for an inventory search. Under these circumstances, the trial court's findings of facts are not sufficient to support its conclusion of law that the State satisfied the second community caretaking

---

[3] The State conceded at oral argument that the car could have been turned off without the key fob.

requirement. And, even though the impoundment of Wood's car was authorized under RCW 46.55.113, it was not lawful because the troopers did not consider reasonable alternatives.[4]

Because the impoundment was unlawful, the inventory search of his car was improper. An inventory search may occur after a vehicle is lawfully impounded. Tyler, 177 Wn.2d at 701. Trooper Palm obtained a warrant to search Wood's car based exclusively on what was observed during the unlawful search. When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed. State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999). Therefore, the evidence obtained from Wood's car was fruit of the poisonous tree, and must be suppressed. Where the State's case rests exclusively on improperly seized evidence, the proper remedy is to vacate the conviction and dismiss the charge with prejudice. State v. Hopkins, 128 Wn. App. 855, 866, 117 P.3d 377 (2005). Wood's conviction rested exclusively on the controlled substances obtained from the search of his car after the seizure.

Because the car was unlawfully impounded, the seizure of evidence from Wood's car was unlawful. Thus, the trial court erred in denying Wood's motion to suppress. We reverse.

---

[4] We distinguish this scenario from one in which a car is summarily towed from a tow away zone because no one is present with the vehicle. While Wood's car was parked in a 24 hour tow zone, he was present at the scene and, under Tyler, the officers should have considered reasonable alternatives before impoundment, including permitting Wood to arrange a private tow.

II. <u>VUCSA Fine</u>

To make a clear record we also address Wood's second argument, where he argues that the trial court exceeded its authority by imposing a $3,000 fine pursuant to the Violation of the Uniform Controlled Substances Act (VUCSA), chapter 69.50 RCW. RCW 69.50.430(2) authorizes a $2,000 fine for an individual's second or subsequent VUCSA conviction. Wood has a prior VUCSA conviction. Wood asserts that the trial court was not authorized to impose a $3,000 fine instead of the $2,000 authorized by RCW 69.50.430(2).

The State responds that, because Wood failed to object to the fine below, and the court did not exceed its statutory authority, the challenge to the fine is waived. It argues that the court had authority to impose a $3,000 fine, interpreting it as a $2,000 fine under VUCSA and $1,000 as a general fine.

This court has held that a trial court's error in imposing costs not authorized by statute is a challenge that may be raised for the first time on appeal. <u>State v. Diaz-Farias</u>, 191 Wn. App. 512, 520, 362 P.3d 322 (2015).

Here, the trial court ordered Wood to pay a $3,000 VUCSA fine, not a $2,000 VUCSA fine and a $1,000 fine under RCW 9A.20.021(1)(b), which states that a maximum penalty for a class B felony may include a fine up to $20,000. The trial court exceeded its authority by imposing a $3,000 VUCSA fine instead of the statutory $2,000 fine. If we were not reversing the conviction, we would remand to the trial court to correct the VUCSA fine.

III.    Community Custody Conditions

Finally, Wood argues that two unlawful community custody conditions should be stricken from his sentence. He argues first that the condition ordering him to remain outside "known drug areas as defined by DOC [(Department of Corrections)] officer" is unconstitutionally vague. The State concedes that "drug areas" is unconstitutionally vague and this condition should be clarified or stricken. We accept the State's concession.

Wood argues second that the condition prohibiting him from visiting establishments where alcohol is the primary commodity for sale is not crime related. A "crime related prohibition" is an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted. RCW 9.94A.030(10). The State argues that, even though this condition is listed under crime related prohibitions in the judgment and sentence, "it is not that kind of condition," claiming instead that it is a condition limiting Wood's entry into a specific geographical boundary. But, at sentencing the trial court stated, "I think that it may well be that alcohol is the sort of substance that sometimes weakens a person's judgment and resolve. . . . I think I'm going to impose this condition." This refutes the State's argument that the trial court intended this to be a condition limiting Wood's entry into specific geographical boundaries. At sentencing the State acknowledged that there were no allegations that alcohol was involved in Wood's convicted offense. Therefore, the condition prohibiting Wood from entering establishments where alcohol is the primary commodity for sale is not crime related.

14

If we were not reversing the conviction, we would remand to the trial court to strike both of the contested conditions.

We reverse.

WE CONCUR: