# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　v.<br><br>WILLIAM KELLY PILAND,<br><br>　　　　　　　Appellant. | No. 52117-2-II<br><br>UNPUBLISHED OPINION |

MAXA, C.J. – William Piland appeals his convictions of unlawful possession of methamphetamine with intent to deliver, unlawful possession of heroin, and second degree unlawful possession of a firearm. Evidence supporting those convictions was discovered following a traffic stop that Piland claims was pretextual and therefore was unlawful.

Piland claims that defense counsel's failure to argue that the traffic stop was pretextual deprived him of his right to effective assistance of counsel. We hold that the record is insufficient for Piland to satisfy his burden of showing that the trial court would have ruled that the traffic stop was unlawful, and therefore we reject Piland's ineffective assistance of counsel claim.

Piland also argues that the trial court erred in imposing a jury demand fee and a crime lab fee as legal financial obligations (LFOs) after the court found him indigent. As the State

concedes, we hold that the jury demand fee must be stricken and that the crime lab fee may be suspended if Piland files a verified petition on remand.

Accordingly, we affirm Piland's convictions, but we remand for the trial court to strike the jury demand fee and address the crime lab fee.

FACTS

On November 10, 2016, Vancouver Police Detective Zachary Ripp, who was working with the Neighborhood Response Team (NRT), contacted patrol officer James Kelly. Ripp asked Kelly to stop a car Piland was driving because he believed that one of Piland's passengers was the subject of a current narcotics investigation. Kelly stopped Piland's car after noticing an altered trip permit on the car.

Kelly gave the following testimony at Piland's first trial:[1]

> A. That day when I was working routine patrol, Detective Ripp got ahold of me and advised that he was doing some detective work in the area, asked for my assistance in stopping a vehicle and contacting the subjects in the vehicle.
> Q. Okay. And did you stop the defendant's vehicle for an altered trip permit?
> A. I did. That was the first thing I noticed on the vehicle --
> Q. Okay.
> A. -- before I even stopped him.

Report of Proceedings (RP) at 43.

During the second trial, Kelly explained:

> Q. (By Mr. Podhora) Detective Kelly, could you tell us about how you came into contact with the defendant on November 10th, 2016?
> A. Yeah, Detective Ripp got a hold of me, advised me of -- they were looking for somebody.
> Q. Okay.
> A. And they were --
> Q. Let me stop you there. Was it during the course of a traffic stop that --
> A. Yes.

---

[1] Piland's first trial ended in a mistrial because one of the jurors was unable to continue to serve. We present the facts from both trials because we need to decide if Piland makes a sufficient ineffective assistance of counsel claim.

Q. -- you came into contact --
A. Yes, it was.
Q. -- with the defendant?  Okay.
. . . . .
A.  Before I activated my lights or anything like that without pulling the car over, I noticed that in the rear window was a trip permit with clear plastic tape over it.  Trip permits are, like, three day trip permits for vehicles that are traveling over state lines, or they're waiting to go to DEQ or something like that.  But on the trip permit, it was -- obviously somebody had wrote over the plastic with a Sharpie --
Q. Okay.
A. -- altering the trip permit.
Q. Okay.  Is that some sort of -- is that, like, an infraction or --
A. Yeah, it's --
Q. -- misdemeanor or something in --
A. -- a misdemeanor in the state of Washington.
Q.  Okay.  So you observed what you believed might be a traffic-related infraction?
A. Yes.
Q. Okay.  And what did you do next?
A. At that time I activated my overhead lights and stopped the vehicle.

RP at 370-72.

Kelly removed Piland from the car, patted him down, and confiscated his wallet and cell phone.  During the stop, NRT officers arrived and took custody of Piland.  Within an hour or so of the traffic stop, Ripp obtained a search warrant for Piland's residence and officers seized evidence of methamphetamine, heroin, digital scales, and electronics from Piland's bedroom.  In addition, officers called a K-9 unit to sniff Piland's car.  The next day, Ripp obtained a search warrant for Piland's car and seized a pistol and ammunition during its execution.

The State charged Piland with unlawful possession of methamphetamine with intent to deliver, unlawful possession of heroin, and second degree unlawful possession of a firearm.  A jury found Piland guilty of all counts.  At sentencing, the court stated that discretionary LFOs would be waived.  The court struck three discretionary LFOs from the judgment and sentence, but neglected to strike the $250 jury demand fee.  And the judgment and sentence also imposed a $100 crime lab fee.

Piland appeals his convictions and the imposition of the challenged LFOs.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Piland argues that defense counsel's failure to file a motion to suppress based on a pretextual stop constituted ineffective assistance of counsel. We hold that the record is insufficient for Piland to meet his burden of showing ineffective assistance of counsel.

1.    Legal Principles

Ineffective assistance of counsel arises from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *Id.*

In the context of failing to file a motion to suppress, defense counsel's performance will only be considered deficient if the defendant can show that the trial court likely would have granted the motion. *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017). "[T]here is no ineffectiveness if a challenge to admissibility of evidence would have failed." *State v. Nichols*, 161 Wn.2d 1, 14-15, 162 P.3d 1122 (2007). Therefore, the question here is whether the trial court likely would have granted a motion to suppress evidence related to the traffic stop if defense counsel had filed one.

2.    Validity of Traffic Stop

Article I, section 7 of the Washington Constitution prohibits warrantless searches unless one of the exceptions to the warrant requirement applies. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). One exception is a traffic stop based on a "reasonable articulable suspicion of either criminal activity or a traffic infraction." *State v. Chacon Arreola,* 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012).

However, a traffic stop purportedly based on a traffic infraction is unconstitutional under article I, section 7 when the infraction is a pretext for conducting a criminal investigation unrelated to the driving. *Id.* at 294; *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). "A pretextual traffic stop occurs when a police officer relies on some legal authorization as a 'mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement.' " *Chacon Arreola,* 176 Wn.2d at 294 (quoting *Ladson*, 138 Wn.2d at 358). To determine whether a stop is pretextual, the court considers the totality of the circumstances, which includes both the officer's subjective intent and the objective reasonableness of the officer's behavior. *Ladson*, 138 Wn.2d at 358-59.

A traffic stop based on both legitimate and illegitimate grounds – a "mixed-motive" traffic stop – does not violate article I, section 7 under certain circumstances. *Chacon Arreola,* 176 Wn.2d at 297-300. The court in *Chacon Arreola* held that a traffic stop is not pretextual if "investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." *Id.* at 297.

The court explained the rationale supporting this holding:

A mixed-motive stop does not violate article I, section 7 so long as the police officer making the stop exercises discretion appropriately. Thus, if a police officer makes

5

an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably necessary in furtherance of traffic safety and the general welfare, the stop is not pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop, and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. Any additional reason or motivation of the officer does not affect privacy in such a case, nor does it interfere with the underlying exercise of police discretion, because the officer would have stopped the vehicle regardless.

*Id.* at 298-99. The court stated that the presence of an illegitimate reason for the traffic stop is material to "whether the officer really stopped the vehicle for a legitimate and independent reason (and thus would have conducted the traffic stop regardless)." *Id.* at 299.

In *Chacon Arreola*, an officer was following Chacon Arreola because of a report that he possibly was driving under the influence. *Id.* at 288. The officer did not observe any signs of intoxication but noticed that the vehicle had an altered exhaust and stopped Chacon Arreola for violating RCW 46.37.390. *Id.* at 289. The officer testified at the suppression hearing that the muffler violation was an actual reason for the stop and that he commonly stops people for muffler violations if it will not interfere with a more pressing matter. *Id.*

The trial court found that the officer was a credible witness and would have stopped Chacon Arreola for the muffler violation even if he had not received the suspected intoxication report. *Id.* As a result, the court ruled that the traffic stop was not pretextual. *Id.* at 290. The Supreme Court upheld the trial court's ruling because "[a] traffic infraction, about which the officer had a reasonable, articulable suspicion, was an actual, conscious, and independent cause of the traffic stop." *Id.* at 300. The court stated that the fact the officer also was motivated by a related investigation was irrelevant. *Id.*

6

3.    Analysis

Piland argues that the facts and circumstances in the record demonstrate that the traffic stop was pretextual. First, Ripp asked Kelly to stop the vehicle because the NRT believed that the subject of its narcotics investigation was riding in Piland's car. Second, the NRT officers quickly came to the scene of the traffic stop, suggesting that the stop was not for a simple traffic infraction. Third, Kelly removed Piland from the car, frisked him, and took his wallet and cellphone, suggesting that this was a criminal investigation not a traffic stop. Fourth, the NRT detectives called a K-9 unit to sniff Piland's car, something totally unrelated to the traffic stop. And fifth, within an hour after the stop, Ripp had obtained and executed a search warrant on Piland's apartment, suggesting that the main focus of the traffic stop was the criminal investigation.

However, the evidence shows that Kelly may have stopped Piland's car based on both legitimate and illegitimate grounds. Ripp did ask Kelly to stop the car as part of a criminal investigation, and there was no indication that Ripp had a reasonable articulable suspicion that Piland or his passengers were engaged in criminal activity. But when Kelly encountered the car, the first thing he noticed was the altered trip permit. Kelly stated that he stopped the car because of the altered trip permit.

If defense counsel had filed a suppression motion, the trial court would have had to determine whether this was a mixed-motive traffic stop. If so, the court would have had to decide, among other issues, if the altered trip permit was an "actual, conscious, and independent cause of the traffic stop" and whether Kelly made an "independent and conscious determination that a traffic stop to address a suspected traffic infraction [was] reasonably necessary in

7

furtherance of traffic safety and the general welfare." *Chacon Arreola*, 176 Wn.2d at 297, 298-99.

Unfortunately, the record is insufficient for us to determine how the trial court would have resolved these issues. Because there was no suppression hearing, Kelly was not asked about his motivation for stopping Piland's car beyond his affirmative answer to the question "And did you stop the car for an altered trip permit?" RP at 43. There is no evidence that reveals whether the altered trip permit was an actual, conscious, and independent reason for the stop or whether Kelly determined that a traffic stop was reasonably necessary to address the violation. There is no evidence that reveals whether Kelly would have made the traffic stop based on the altered trip permit regardless of Ripp's request.

The absence of a sufficient record precludes Piland from meeting his burden of proving that the trial court would have granted a suppression motion if defense counsel had filed one. Therefore, Piland cannot establish that his defense counsel's performance was deficient. *See D.E.D.*, 200 Wn. App. at 490. The appropriate means for addressing an issue that requires evidence not in the record is through a personal restraint petition. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

B.   IMPOSITION OF LFOs

Piland argues that the jury demand fee and a crime lab fee the trial court imposed as LFOs must be stricken. The State concedes that the trial court should have removed the jury demand fee from the judgment and sentence after ruling that discretionary LFOs would not be imposed and that the trial court can suspend the crime lab fee if Piland files a verified petition. We agree with the State.

At sentencing, the trial court waived discretionary costs. However, the court did not strike the jury demand fee from the judgment and sentence. Both Piland and the State characterize this as a scrivener's error. We remand for the trial court to strike the jury demand fee.

RCW 43.43.690 allows the trial court to suspend the crime lab fee if the court finds that the defendant does not have the ability to pay the fee and if the defendant files a verified petition. On remand, Piland can submit a verified petition to request suspension of the crime lab fee.

CONCLUSION

We affirm Piland's convictions, but we remand for the trial court to strike the jury demand fee and address the crime lab fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
MELNICK, J.

_____
GLASGOW, J.